*Bhaktibhai-Patel v. Garland*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2020
No. 19-2565

**PARESH KUMAR BHAKTIBHAI-PATEL,**
*Petitioner*,

v.

**MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,**
*Respondent.*

---

On Petition for Review of an Order
of the Department of Homeland Security

---

ARGUED: DECEMBER 18, 2020
DECIDED: APRIL 27, 2022

---

Before:     LIVINGSTON, *Chief Judge*, and PARK and MENASHI, *Circuit Judges*.

Paresh Kumar Bhaktibhai-Patel petitions for review of an immigration officer's decision to reinstate a prior order of removal against Bhaktibhai-Patel and for review of an immigration judge's subsequent decision that Bhaktibhai-Patel does not qualify to pursue claims for withholding of removal to India. In light of recent Supreme

Court decisions, we **DISMISS** Bhaktibhai-Patel's petition for lack of jurisdiction. Bhaktibhai-Patel's petition raises "questions of law and fact ... arising from" efforts "to remove [him] from the United States" but the petition does not, as it must, present us with a judicially reviewable "final order [of removal]." 8 U.S.C. § 1252(b)(9).

—————

ANNE E. DOEBLER, Buffalo, New York, *for Petitioner*.

YANAL H. YOUSEF, Trial Attorney, Office of Immigration Litigation (Joseph H. Hunt, Assistant Attorney General, Civil Division, Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, *on the brief*), United States Department of Justice, *for Respondent*.

—————

MENASHI, *Circuit Judge*:

In the Immigration and Nationality Act ("INA"), Congress granted Article III courts limited jurisdiction to review the Executive Branch's decisions in immigration cases. "Judicial review of all questions of law and fact ... arising from any action taken or proceeding brought to remove an alien from the United States under" the INA is "available only in judicial review of a final order [of removal]." 8 U.S.C. § 1252(b)(9). For such judicial review to be available, a "petition for review must be filed not later than 30 days after the date of the final order of removal." *Id.* § 1252(b)(1). These two rules deprive us of jurisdiction to consider the petition in this case.

Petitioner Paresh Kumar Bhaktibhai-Patel, a citizen of India, was ordered removed from the United States in 2010 and then again on March 25, 2016. Three years later, on March 8, 2019, Bhaktibhai-

Patel illegally reentered the country. The next day, a Department of Homeland Security ("DHS") immigration officer reinstated the 2016 removal order, thereby subjecting Bhaktibhai-Patel to removal from the United States pursuant to 8 U.S.C. § 1231(a)(5). That statute provides a summary removal process applicable to aliens who illegally reenter the United States after having been ordered removed. Bhaktibhai-Patel sought to avoid removal to India, but an immigration judge determined that Bhaktibhai-Patel did not qualify for an opportunity to pursue such withholding of removal.

Bhaktibhai-Patel then filed the petition for review that we consider in this case, challenging the decisions to reinstate his 2016 order and to find him ineligible for withholding of removal. This petition thus presents "questions of law and fact ... arising from an[] action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Under the INA, we have jurisdiction to consider "such questions" "only" if Bhaktibhai-Patel's petition allows us to exercise "judicial review of a final order [of removal]." *Id.* The petition in this case does not. Bhaktibhai-Patel needed to petition for review of any order of removal entered against him "not later than 30 days after the date" that the order became "final." *Id.* § 1252(b)(1). Yet both Bhaktibhai-Patel's 2016 order of removal and DHS's decision to reinstate that removal order became final more than 30 days before he filed this petition. *See Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2284-88 (2021). While Bhaktibhai-Patel filed this petition within 30 days of the immigration judge's adverse withholding determination, that determination does not qualify as an order of removal and does not fall within § 1252's jurisdictional grant. *See id.* at 2287-88. Accordingly, we dismiss Bhaktibhai-Patel's petition for lack of jurisdiction.

3

**BACKGROUND**

**I**

In 1996, Congress enacted an expedited procedure applicable to aliens who illegally reenter the United States after having been removed pursuant to an order of removal. That legislation provides that "[i]f the Attorney General[1] finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, div. C, § 305(a)(3), 110 Stat. 3009, 3009-599 (codified at 8 U.S.C. § 1231(a)(5)). Congress further specified that such an "alien is not eligible and may not apply for any relief under th[e] [INA], and the alien shall be removed under the prior order at any time after the reentry." *Id.* As the Supreme Court has recognized, this provision "applies to all illegal reentrants, and it explicitly insulates the removal orders from review, while also generally foreclosing discretionary relief from the terms of the reinstated order." *Johnson*, 141 S. Ct. at 2282 (internal quotation marks omitted); *see also Herrera-Molina v. Holder*, 597 F.3d 128, 139 (2d Cir. 2010) (observing that relief in the form of "asylum or cancellation of removal[] is not available" to illegal reentrants).

The process for reinstating an illegal reentrant's prior order of removal is simple enough. "In short, the agency obtains the alien's prior order of removal, confirms the alien's identity, determines

---

[1] The Secretary of Homeland Security is now responsible for carrying out this provision. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 101, 441, 471, 116 Stat. 2135, 2142, 2192, 2205.

whether the alien's reentry was unauthorized, provides the alien with written notice of its determination, allows the alien to contest that determination, and then reinstates the order." *Johnson*, 141 S. Ct. at 2282 (citing 8 C.F.R. §§ 241.8(a)-(c), 1241.8(a)-(c)).[2] But things get slightly more complicated after that. While Congress explicitly denied illegal reentrants "eligib[ility] … for any relief under" the INA, 8 U.S.C. § 1231(a)(5), the government continues to comply with international treaties that require the United States to forbear from removing aliens to a specific country when either (1) the alien's "life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion," United Nations Convention Relating to the Status of Refugees, art. 33, July 28, 1951, 189 U.N.T.S. 150, 176,[3] or (2) "there are substantial grounds for believing that he would be in danger of being subjected to torture" in that country, United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading

---

[2] The regulations relevant to reinstating orders of removal appear in both Chapters I and V of Title 8 of the Code of Federal Regulations. For the remainder of this opinion, we cite only the regulations in Chapter I (which governs DHS) and omit parallel citations to Chapter V (which governs the Executive Office of Immigration Review, a sub-agency of the Department of Justice).

[3] We call this form of relief from removal "statutory withholding." The United States agreed "to apply articles 2 to 34 inclusive" of the Convention Relating to the Status of Refugees when it ratified the United Nations Protocol Relating to the Status of Refugees, art. 1, November 1, 1968, 19 U.S.T. 6223. Accordingly, the INA provides in 8 U.S.C. § 1231(b)(3)(A) that "the Attorney General may not remove an alien to a country if the Attorney General decides" that persecution would occur there because of a protected ground.

Treatment or Punishment ("CAT"), art. 3, December 10, 1984, 1465 U.N.T.S. 85, 114.[4]

To ensure compliance with those treaties, the Attorney General implemented a "screening process" for illegal reentrants that "allow[s] for the fair and expeditious resolution" of statutory withholding and CAT relief issues "without unduly disrupting the streamlined removal processes applicable to" such reentrants. Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8479 (Feb. 19, 1999). The screening process works as follows: If an alien subject to a reinstated order of removal under § 1231(a)(5) "expresses a fear of returning to the country designated in that [reinstated] order," that alien is "immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture." 8 C.F.R. § 241.8(e). If the asylum officer finds that such a reasonable fear exists, the alien is referred to an immigration judge "for full consideration of the request for withholding of removal only." *Id.* § 208.31(e). If the asylum officer determines that the alien "has not established a reasonable fear of persecution or torture," however, the alien may ask an immigration judge to review only that specific determination. *Id.* § 208.31(f). "If the immigration judge concurs with the asylum officer's determination that the alien does not have a reasonable fear of persecution or torture … [n]o appeal shall lie" from that decision and "the case [is] returned to DHS for removal of the alien." *Id.* § 208.31(g)(1). If the immigration

---

[4] We call this form of relief from removal "CAT relief." *See also* 8 U.S.C. § 1231 note (directing executive agencies to implement the CAT); *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n.4 (2006) (noting that despite "the absolute terms in which the bar on relief" for illegal reentrants "is stated," an illegal reentrant still may seek statutory withholding or CAT relief).

judge disagrees with the asylum officer's determination, the immigration judge proceeds to determine the alien's eligibility for statutory withholding and CAT relief subject to the procedures normally applicable to such requests. *Id.* § 208.31(g)(2). Courts refer to the proceedings that occur pursuant to this screening process as "withholding-only proceedings." *Johnson*, 141 S. Ct. at 2282.

## II

Petitioner Bhaktibhai-Patel, a citizen of India, was removed from the United States in 2010 and again in 2017, the latter time pursuant to a removal order entered on March 25, 2016. He illegally reentered the United States on March 8, 2019, and was apprehended the same day.[5] The next day, March 9, a DHS immigration officer issued a "Notice of Intent/Decision to Reinstate" his 2016 order of removal, which designated India as the country of removal. Cert. Admin. R. 125.

Bhaktibhai-Patel expressed a fear of persecution and torture in India based on his political views, triggering the protocol set out in 8 C.F.R. § 208.31. On June 14, 2019, an asylum officer interviewed Bhaktibhai-Patel. At that interview, Bhaktibhai-Patel explained that he feared persecution and torture if removed to India due to his public support for the Congress Party. That support consisted of putting up posters and helping the Congress Party conduct local rallies. Bhaktibhai-Patel alleged that supporters of the rival Bharatiya Janata Party ("BJP") had attacked him on three occasions and threatened him with death on account of his public support of the Congress Party. He

---

[5] This time, he entered the United States through Canada, where he claimed to have been granted asylum and given an ID, although he could not produce the ID when an asylum officer asked to see it.

clarified, however, that he did not know if the assailants actually worked for the BJP, only that they supported it. Bhaktibhai-Patel reported suffering a sprained hand in one attack and fainting during another. He further alleged that, on two occasions, he went to the police to report incidents of harassment by BJP supporters, but the police refused to take his statement because the police favored the BJP and knew that Bhaktibhai-Patel supported the Congress Party.

The asylum officer asked Bhaktibhai-Patel if he could relocate within India to a place where his assailants would not find him or where the Congress Party had political control. Bhaktibhai-Patel answered in the negative. He explained that his assailants told him they would find and kill him wherever he goes in India. When pressed on how they would locate him, Bhaktibhai-Patel asserted that they have his "bio data" and would use the BJP's "big," country-wide "network" to find him. *Id.* at 136. However, Bhaktibhai-Patel admitted that he was not personally acquainted with his assailants, and he could not explain how his assailants obtained his "bio data." *Id.* at 132, 136. When pressed about why he would not be safe in an Indian state under Congress Party control, Bhaktibhai-Patel said "it is under the control of BJP, there is no Congress party over there, the country is ruled by BJP." *Id.* at 137.

The asylum officer determined that, while Bhaktibhai-Patel's testimony was generally credible, Bhaktibhai-Patel did not have a reasonable fear of persecution or torture in India. In his filings, the asylum officer appeared to assert two alternative grounds for this determination. First, the asylum officer wrote that, while Bhaktibhai-Patel "established a reasonable possibility of showing past persecution on account of his political opinion, the evidence establish[ed] ... [that] he is able to relocate within India in order to

avoid future persecution." *Id.* at 143. The officer explained that "[t]he record does not show that the people who attacked [Bhaktibhai-Patel] would be motivated and able to harm him in another part of India" and that Bhaktibhai-Patel failed to "establish" otherwise because he "could not affirm that the people who attacked him knew his identity." *Id.* The officer also cited evidence that the BJP does not control every state in India, which showed that Bhaktibhai-Patel "could seek protection outside of his state" and rebutted Bhaktibhai-Patel's unsupported assertion that the "BJP control[s] the [entire] area and [the] Congress party does not exist." *Id.* at 143-44; *see also Singh v. Garland*, 11 F.4th 106, 117 (2d Cir. 2021) (upholding a similar agency determination about internal relocation).

Second, the immigration officer observed that Bhaktibhai-Patel "did not provide evidence that the four individuals who threatened him were employed by or associated with the government" and that his "testimony that the police refused to take a report against the BJP is insufficient in itself to establish that the police would let the BJP attack the applicant." Cert. Admin. R. 143. This reasoning, which focused on the lack of government responsibility for the alleged harm, indicates that the asylum officer did not think that Bhaktibhai-Patel would experience "persecution" or government-sponsored torture in India at all, even in the location where he previously lived. *See id.* at 124 (asylum officer concluding that Bhaktibhai-Patel did not establish a reasonable fear of torture in India because he did "not establish[] that there is a reasonable possibility" that the "harm [he] fear[ed] would be inflicted by or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity"); *see also Singh*, 11 F.4th at 115 ("Members of a political party are not the government; for mistreatment inflicted by party members

9

to amount to persecution, an applicant must show that the government was unwilling or unable to control the attackers.").

Bhaktibhai-Patel sought review of the asylum officer's negative reasonable fear determination and received a hearing before an immigration judge on August 7, 2019. The immigration judge recounted the asylum officer's reasoning that Bhaktibhai-Patel "could relocate to a part of [India] where he is not likely to be tortured." Cert. Admin. R. 8. Additionally, the immigration judge noted that there was "no evidence in the record" that Bhaktibhai-Patel's assailants "were members of the government but rather simply that they were members of an opposition political party." *Id.* at 46.[6] Accordingly, the immigration judge concurred in the asylum officer's negative reasonable fear determination and "returned" the case "to DHS for removal of [Bhaktibhai-Patel]." Cert. Admin. R. 9. Bhaktibhai-Patel then filed a petition for review on August 19, 2019—twelve days after the immigration judge precluded him from pursuing statutory withholding and CAT relief, but over five months after DHS reinstated his 2016 order of removal.

## DISCUSSION

Although both Bhaktibhai-Patel and the government insist we have jurisdiction to review this petition, "federal courts have an independent obligation to ensure that they do not exceed the scope of

---

[6] This statement was not included in the official record of the immigration judge's oral decision. However, the immigration judge rendered her oral decision in eleven parts, with pauses for discussion with the interpreter, and she concluded the above-quoted discussion by stating: "That constitutes the decision and order of the Court." Cert. Admin. R. 46; *see also id.* at 43-46. The immigration judge therefore seems to have intended this reasoning to be part of her decision.

10

their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see also Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019) ("[E]ven if no party raises the issue, courts have an obligation to consider subject matter jurisdiction *sua sponte*."). [7] Carrying out this duty, we conclude that the INA deprives us of jurisdiction to review Bhaktibhai-Patel's petition. [8] Our holding forecloses judicial review of agency decisions in withholding-only proceedings in some cases.[9] To the extent it does so, that holding is

---

[7] We requested supplemental briefing on the jurisdictional question on August 6, 2021. The government submitted its supplemental letter brief on August 27, 2021, and Bhaktibhai-Patel submitted his supplemental letter brief on September 17, 2021.

[8] While our court recently exercised jurisdiction to review the merits of a petition—like Bhaktibhai-Patel's—that sought review of withholding-only proceedings, *Quintanilla-Mejia v. Garland*, 3 F.4th 569 (2d Cir. 2021), that opinion did not analyze whether a court has jurisdiction over such petitions. Such "a sub silentio holding is not binding precedent." *Friends of the E. Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 153 (2d Cir. 2016) (quoting *Getty Petroleum Corp. v. Bartco Corp.*, 858 F.2d 103, 113 (2d Cir. 1988)). We also once stated by way of argument when addressing a different legal issue that the government did "not dispute that [an illegal reentrant], if his withholding application is denied, could petition this Court for review of that denial." *Guerra v. Shanahan*, 831 F.3d 59, 63 (2d Cir. 2016), *abrogated by Johnson*, 141 S. Ct. 2271. *Guerra* has now been abrogated. But even if it had not been, "drive-by jurisdictional rulings of this sort (if [*Guerra*] can even be called a ruling on the point rather than a dictum) have no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998).

[9] *But see infra* note 21 (explaining when illegal reentrants may obtain judicial review of withholding-only determinations).

11

required by the INA's jurisdictional limitations and is consistent both with the summary process Congress provided for removing illegal reentrants and with the Constitution.

**I**

As relevant here, the INA's jurisdictional rules provide as follows: "Judicial review of a final order of removal" proceeds subject to the "requirements" "provided in subsection (b)" of 8 U.S.C. § 1252. 8 U.S.C. § 1252(a)(1), (b). One such requirement is that any "petition for review" of a "final order of removal" "must be filed not later than 30 days after the date of" that final order. *Id.* § 1252(b)(1). This deadline is jurisdictional and therefore not subject to equitable tolling. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 118 (2d Cir. 2008) (holding that "§ 1252(b)(1) is indeed jurisdictional in nature" and "therefore ... reject[ing] Petitioners' argument that the applicable limitations period of 30 days is subject to equitable tolling"); *see also Stone v. INS*, 514 U.S. 386, 405 (1995) (holding that the "time limit[]" for filing a petition mandated by the INA's former § 106(a), the predecessor to § 1252, is "mandatory and jurisdictional, and ... not subject to equitable tolling") (internal quotation marks and citation omitted); *Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("[T]his Court has no authority to create equitable exceptions to jurisdictional requirements.").

Next, the concluding paragraph of subsection (b) directs that "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available *only* in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). And if that were not clear

enough, the paragraph goes on to state that, "[e]xcept as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." *Id.* [10] Section 1252(b)(9) is unambiguous: When jurisdiction is not "otherwise provided" elsewhere in § 1252, a court lacks jurisdiction to review any "question[] of law [or] fact ... arising from an[] action taken or proceeding brought to remove an alien from the United States" unless the court performs that review while conducting "judicial review of a final order [of removal] under" § 1252. 8 U.S.C. § 1252(b)(9); *see also Nasrallah*, 140 S. Ct. at 1690 (explaining that § 1252(b)(9) "establish[es] that" questions arising from actions taken or proceedings brought to remove an alien "may be reviewed *together with* the final order of removal") (emphasis added); *Jennings v. Rodriguez*, 138 S. Ct. 830, 853 (2018) (Thomas, J., concurring in Part I and Parts III–VI and concurring in the judgment) ("If an alien raises a claim arising from [a removal-related] action or proceeding, courts cannot review it unless they are reviewing 'a final order' under § 1252(a)(1) or exercising jurisdiction 'otherwise provided' in § 1252.").

While § 1252 explains that a "final order of removal" is the key to judicial review in the context of "action[s] taken or proceeding[s]

---

[10] Congress added this second sentence to § 1252(b)(9) as part of the REAL ID Act of 2005 to "respond[] to [the Supreme] Court's 2001 decision in *St. Cyr* ... that [§ 1252(b)(9)], although purporting to eliminate district court review of final orders of removal, did not eliminate district court review via habeas corpus of constitutional or legal challenges to final orders of removal." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020) (emphasis omitted).

brought to remove an alien from the United States," that section does not define the term "final order of removal." 8 U.S.C. § 1252(a)(1), (b)(9). That definition appears in § 1101, which provides that an "order of deportation" is an order "concluding that the alien is deportable or ordering deportation." *Id.* § 1101(a)(47)(A). [11] The Supreme Court has emphasized that this definition does not "encompass all determinations made during and incident to the administrative proceeding on removability." *Nasrallah*, 140 S. Ct. at 1692 (internal quotation marks omitted). Rather, the definition in § 1101(a)(47)(A) excludes a decision that relates to an alien's ultimate removal but "does not affect the validity" of the conclusion that an alien may or must be removed from the United States. *Id.* at 1691; *see also Johnson*, 141 S. Ct. at 2288. Such a decision neither itself constitutes an "order of removal" nor does it "merge into" an alien's underlying order of removal. *Nasrallah*, 140 S. Ct. at 1691; *see also Johnson*, 141 S. Ct. at 2288.

As for when an order of removal "become[s] final," that occurs "upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B); *see also Johnson*, 141 S. Ct. at 2284-85 (holding that a removal order is "administratively final" under 8 U.S.C. § 1231(a)(1)(B)(i) "once the

---

[11] "[T]he terms 'order of deportation' and 'order of removal' are synonymous" because "[w]hat was formerly known as 'deportation' [in the INA] is now called 'removal.'" *Herrera-Molina*, 597 F.3d at 132 n.4; *see also Nasrallah*, 140 S. Ct. at 1690 ("[I]n the deportation context, a 'final order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'") (quoting 8 U.S.C. § 1101(a)(47)(A)).

14

BIA has reviewed the order (or the time for seeking the BIA's review has expired)").

## II

Applying § 1252 to this case, we dismiss Bhaktibhai-Patel's petition for review for lack of jurisdiction.

## A

Bhaktibhai-Patel petitioned for review of DHS's decision to reinstate his 2016 order of removal and the immigration judge's decision that he may not pursue claims for statutory withholding or CAT relief. By any reasonable interpretation, this petition asks us to review "questions of law and fact ... arising from ... action[s] taken or proceeding[s] brought to remove [Bhaktibhai-Patel] from the United States." 8 U.S.C. § 1252(b)(9). While the Supreme Court has yet definitively to resolve the meaning of "arising from" in the context of § 1252(b)(9),[12] it has explicitly recognized that questions regarding an

---

[12] *See Jennings*, 138 S. Ct. at 839-41 (plurality opinion). In *Jennings*, *Johnson*, and *Nielsen v. Preap*, the Court decided questions relating to immigration detention—not an alien's eligibility for adjustment of status or relief—and the plurality reasoned that "it [wa]s not necessary ... to provide a comprehensive interpretation" of the term "arising from" in § 1252(b)(9) to conclude that such questions do not fall within the scope of § 1252(b)(9). *Jennings*, 138 S. Ct. at 841; *see also Johnson*, 141 S. Ct. at 2284 n.4 (plurality opinion); *Nielsen v. Preap*, 139 S. Ct. 954, 962 (2019) (plurality opinion). *But see Jennings*, 138 S. Ct. at 854-55 (Thomas, J., concurring in Part I and Parts III-VI and concurring in the judgment) (arguing that such questions do fall within § 1252(b)(9)'s scope); *Johnson*, 141 S. Ct. at 2292 (Thomas, J., concurring except for footnote 4 and concurring in the judgment) (same); *Nielsen*, 139 S. Ct. at 974 (Thomas, J., concurring in part and concurring in the judgment) (same). Recently, the Court relied on the *Jennings* plurality's

alien's eligibility for CAT relief—and, by logical extension, statutory withholding—are covered by § 1252(b)(9). *See Nasrallah*, 140 S. Ct. at 1691 ("§ 1252(b)(9) simply establish[es] that a CAT order may be reviewed together with the final order of removal."). Therefore, we have jurisdiction to decide this case "only" if Bhaktibhai-Patel's petition allows us to exercise "judicial review of a final order [of removal] under" § 1252. 8 U.S.C. § 1252(b)(9); *see also Nasrallah*, 140 S. Ct. at 1691 (providing that § 1252(b)(9) "establish[es] that" questions relating to CAT relief "may be reviewed *together with* the final order of removal") (emphasis added). [13] Bhaktibhai-Patel's petition, however, does not challenge any judicially reviewable final order of removal.

The petition presents three possibilities for what might—but ultimately does not—constitute a final order of removal that we may review: (1) Bhaktibhai-Patel's March 2016 order of removal, (2) DHS's March 2019 decision to reinstate that order of removal, and (3) the immigration judge's August 2019 decision denying Bhaktibhai-

---

reasoning to sustain its jurisdiction to review DHS's decision to terminate the DACA program. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020). But like the *Jennings* plurality, the *Regents* Court did not attempt to define the meaning of "arising from." *See id.* Nor did *Regents* concern an alien's eligibility for immigration status or relief.

[13] Alternatively, we would have jurisdiction if § 1252 "otherwise provided" for jurisdiction in a case like this. 8 U.S.C. § 1252(b)(9). But § 1252 contains no provision that would enable us to exercise jurisdiction in this case in the absence of a judicially reviewable final order of removal. Section 1252(a)(4) discusses judicial review of CAT claims, but that provision simply establishes that "a CAT order is reviewable *as part of* the review of a final order of removal under 8 U.S.C. § 1252." *Nasrallah*, 140 S. Ct. at 1691 (internal quotation marks omitted and emphasis added).

Patel's request to pursue statutory withholding and CAT relief. We can easily dispense with the third option. Decisions made during withholding-only proceedings cannot qualify as orders of removal. Those decisions—which concern an alien's eligibility for statutory withholding and CAT relief—do not determine whether "the alien is deportable or order[] deportation." 8 U.S.C. § 1101(a)(47)(A). Nor do those decisions "affect the validity" of any determination regarding an alien's deportability or deportation. *Nasrallah*, 140 S. Ct. at 1691. Rather, "[i]f an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* [a] particular country, not *from* the United States." *Johnson*, 141 S. Ct. at 2285; *see also* 8 C.F.R. §§ 208.16(f), 208.22. In such a case, "[t]he removal order is not vacated or otherwise set aside. It remains in full force, and DHS retains the authority to remove the alien to any other country authorized by the statute." *Johnson*, 141 S. Ct. at 2285; *see also id.* at 2283 ("[B]ecause withholding of removal is a form of country specific relief, nothing prevents DHS from removing the alien to a third country other than the country to which removal has been withheld or deferred.") (internal quotation marks, citation, and alteration omitted); *Nasrallah*, 140 S. Ct. at 1691 (stating the identical proposition in the context of CAT relief). Any decision an immigration judge makes during withholding-only proceedings is therefore "not itself a final order of removal" and "does not merge into [an alien's] final order of removal." *Nasrallah*, 140 S. Ct. at 1691; *see also Johnson*, 141 S. Ct. at 2288. Accordingly, the immigration judge's August 2019 decision denying Bhaktibhai-Patel's request to

pursue statutory withholding and CAT relief cannot provide a basis for our jurisdiction under § 1252.[14]

Eliminating the immigration judge's withholding decision leaves Bhaktibhai-Patel's reinstated 2016 order of removal and DHS's March 2019 reinstatement decision as the only possible bases for our jurisdiction. The 2016 removal order obviously qualifies as an order of removal. As for DHS's March 2019 reinstatement decision, our precedents suggest, without explanation, that such a decision represents a final order of removal under § 1252. *See Garcia-Villeda v. Mukasey*, 531 F.3d 141, 150 (2d Cir. 2008) ("[An] alien may also challenge the reinstatement order in a court of appeals. 8 U.S.C. § 1252(a).").[15] To provide us with jurisdiction to review these orders of removal, however, Bhaktibhai-Patel needed to file a petition "not later than 30 days after the date" that the orders became "final." 8 U.S.C. § 1252(b)(1); *Ruiz-Martinez*, 516 F.3d at 118. Both of these orders became final well over 30 days before Bhaktibhai-Patel filed his petition on August 19, 2019.

---

[14] For this reason, we disagree with the Third Circuit's pre-*Nasrallah* holding that an immigration judge's adverse reasonable fear decision "constitutes a final order of removal over which we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1)." *Bonilla v. Sessions*, 891 F.3d 87, 90 n.4 (3d Cir. 2018); *see also Tomas-Ramos v. Garland*, 24 F.4th 973, 980 n.3 (4th Cir. 2022) ("Because the streamlined process that governs reasonable fear determinations does not include an appeal to the Board of Immigration Appeals, the IJ's ruling on review pursuant to § 208.31(g)(1) is the agency's 'final order' for purposes of judicial review under 8 U.S.C. § 1252(a)(1).") (citing *Hernandez-Aquino v. Barr*, 770 F. App'x 88, 88-89 (4th Cir. 2019)).

[15] *But see infra* Part III (questioning this conclusion).

An order of removal "become[s] final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). While the record contains little information about Bhaktibhai-Patel's 2016 order of removal, we have no doubt that the period for seeking BIA review of that order expired—or that the BIA affirmed that order—well over 30 days before August 19, 2019, when Bhaktibhai-Patel filed his petition for review. Furthermore, DHS's decision to reinstate that order of removal did "not affect" that order's "validity," and the reinstatement decision therefore "d[id] not merge into" or otherwise affect the finality of that prior order of removal. *Nasrallah*, 140 S. Ct. at 1691.[16] We therefore may not review Bhaktibhai-Patel's 2016 order of removal.[17]

---

[16] Under the predecessor to § 1231(a)(5), the reinstatement decision did affect the finality of the prior order for limited purposes. That provision stated that "[f]or the purposes of [a provision imposing a criminal sentence on aliens who attempt to forestall their removal] the date on which the finding is made that such reinstatement is appropriate shall be deemed the date of the final order of deportation." 8 U.S.C. § 1252(f) (1994). That exception, however, did not relate to any judicial review provisions and, regardless, Congress chose not to include either that exception or any similar language when it enacted § 1231(a)(5).

[17] Section 1231(a)(5) presents an additional hurdle to judicial review of Bhaktibhai-Patel's prior order of removal. That provision states that "the prior order of removal ... is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). A number of circuit courts have nevertheless held that 8 U.S.C § 1252(a)(2)(D), which was passed as part of the REAL ID Act of 2005, "re-vests the circuit courts with jurisdiction" to review a reinstated

We turn then to DHS's March 2019 reinstatement decision. The definition of finality in § 1101(a)(47)(B) does not squarely apply to that decision because an illegal reentrant may not appeal a reinstatement decision to the BIA (or even to an immigration judge). *See* 8 C.F.R. § 241.8(a).[18] Because the definition at § 1101(a)(47)(B) ties

order of removal on a limited basis. *Garcia de Rincon v. DHS*, 539 F.3d 1133, 1137 (9th Cir. 2008) (citing *Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007), *Debeato v. Att'y Gen.*, 505 F.3d 231, 235 (3d Cir. 2007), and *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513-14 (5th Cir. 2006)); *see also Mejia v. Sessions*, 866 F.3d 573, 588-89 (4th Cir. 2017); *Villegas de la Paz v. Holder*, 640 F.3d 650, 656 (6th Cir. 2010). Subparagraph (D) states that "[n]othing ... in any other provision of [the INA] (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). This provision might imply that § 1231(a)(5)'s limitation of review of the prior order of removal does not extend to constitutional or legal claims raised in accordance with § 1252. While our circuit has yet to address this re-vesting theory, *see Herrera-Molina*, 597 F.3d at 140 n.9; *Lema v. Holder*, 363 F. App'x 88, 90 (2d Cir. 2010), the theory does not permit review of the prior order of removal because it cannot overcome the jurisdictional filing deadline for challenging that order. Indeed, nearly all of the circuit courts that have endorsed the re-vesting theory have recognized that, even if § 1231(a)(5) does not itself fully insulate the prior order of removal from judicial review, § 1252(b)(1)'s jurisdictional filing deadline accomplishes the same result. *See Moreno-Martinez v. Barr*, 932 F.3d 461, 464 (6th Cir. 2019); *Luna-Garcia De Garcia v. Barr*, 921 F.3d 559, 564 (5th Cir. 2019); *Mejia*, 866 F.3d at 589; *Verde-Rodriguez v. Att'y Gen.*, 734 F.3d 198, 203 (3d Cir. 2013); *Cordova-Soto v. Holder*, 659 F.3d 1029, 1031-32 (10th Cir. 2011); *see also Lara-Nieto v. Barr*, 945 F.3d 1054, 1060 & n.4 (8th Cir. 2019). Accordingly, regardless of the re-vesting theory, review of the 2016 order of removal is unavailable in this case.

[18] The statutory definition of finality therefore suggests that a reinstatement decision cannot itself become a final order of removal. *See*

finality to the final stage of agency review available as of right to aliens in regular removal proceedings, however, we conclude that a reinstatement decision becomes final once the agency's review process is complete. An immigration officer's decision to reinstate an illegal reentrant's prior order of removal under § 1231(a)(5) is definitive and not subject to further review within the agency—and therefore "final" for the purposes of § 1252—when the alien chooses not to contest the decision or, if the alien does contest it, when the immigration officer reviews and rejects the alien's objection. *See* 8 C.F.R. § 241.8(a)-(c).

In this case, DHS reinstated Bhaktibhai-Patel's order of removal on March 9, 2019. An immigration officer concluded that Bhaktibhai-Patel was "removable as an alien who has illegally reentered the United States after having been previously removed" and was therefore "subject to removal by reinstatement of the prior order." Cert. Admin. R. 65. Bhaktibhai-Patel acknowledged that determination and was afforded an opportunity to contest the determination. *Id.* A second immigration officer then issued a "Decision, Order, and Officer's Certification" that, "[h]aving reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that [Bhaktibhai-Patel] is subject to removal through reinstatement of the prior order, in accordance with [8 U.S.C. § 1231(a)(5)]." *Id.* Therefore, DHS's reinstatement decision became final on the day of that decision, order, and certification—March 9, 2019. Yet Bhaktibhai-

---

*infra* Part III. We assume here, however, that our precedents allow a reinstatement decision to be treated as a final order of removal subject to judicial review. *Garcia-Villeda*, 531 F.3d at 150.

Patel filed his petition for review on August 19, 2019, well past the 30-day jurisdictional deadline in § 1252. 8 U.S.C. § 1252(b)(1); *Ruiz-Martinez*, 516 F.3d at 118. That untimeliness denies us jurisdiction to review DHS's March 2019 reinstatement decision.

**B**

When DHS reinstated his prior order of removal, Bhaktibhai-Patel expressed fear of persecution and torture if removed to India. But that claim, and the withholding-only proceedings it triggered, do not affect the finality of Bhaktibhai-Patel's 2016 order of removal or of DHS's reinstatement decision. As the Supreme Court has explained, even if an illegal reentrant obtains relief through withholding-only proceedings, "[t]he [reinstated] removal order is not vacated or otherwise set aside ... and DHS retains the authority to remove the alien to any other country authorized by the statute." *Johnson*, 141 S. Ct. at 2285. The same reasoning applies to DHS's reinstatement decision. The validity of that decision depends only on a determination that the alien "ha[d] been subject to a prior order of removal," was "previously removed" pursuant to an order of removal, and "unlawfully reentered the United States." 8 C.F.R. § 241.8(a); *see also* 8 U.S.C. § 1231(a)(5); *Johnson*, 141 S. Ct. at 2282. Accordingly, "the finality of the order of removal" and DHS's decision to reinstate that order do "not depend in any way on the outcome of the withholding-only proceedings." *Johnson*, 141 S. Ct. at 2287; *see also id.* at 2288 ("[T]he order of removal is separate from and antecedent to a grant of withholding of removal.").

Our decision stating otherwise in *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016), has been abrogated by the decision of the Supreme Court in *Johnson*. We held in *Guerra* that an illegal reentrant's

22

reinstated removal order is not "administratively final" during the pendency of withholding-only proceedings and that the mandatory detention provisions of § 1231(a) therefore do not apply to such reentrants. *Id*. at 62-64 ("[A] removal order is not final during the pendency of … withholding-only proceedings."). But the Supreme Court came to the opposite conclusion in *Johnson. See* 141 S. Ct. at 2283-84. If *Guerra* provides any guidance now, it does so via its subsidiary holding that "we have never recognized … 'tiers' of finality" pursuant to which "the finality which permits judicial review is different from the finality which permits [the alien's] detention under 8 U.S.C. § 1231(a)." 831 F.3d at 63. In other words, if, as the Supreme Court has now clarified, withholding-only proceedings do not impact the finality of a removal order for the purpose of § 1231's detention provisions, *see Johnson*, 141 S. Ct. at 2287-88, those proceedings also do not impact the finality of an order of removal for the purpose of judicial review under § 1252.[19]

Furthermore, the logic of *Johnson* applies with equal force to the question of finality under § 1252. At oral argument in *Johnson*, the government argued that the "[t]erm 'final order of removal'" in § 1252 "is ambiguous" and that "'final' [c]ould … mean something different in 1252." Transcript of Oral Argument at 10, 24, *Pham v. Guzman Chavez (Johnson)*, 141 S. Ct. 2271 (2021) (No. 19-897). We do not see the purported ambiguity. Section 1252 discusses judicial review of a

---

[19] We therefore disagree with the Ninth Circuit's conclusion that "a reinstated removal order … [can be] final for detention purposes even though it lacks finality for purposes of judicial review of [the] withholding-only claim." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2018); *see also Martinez v. Larose*, 968 F.3d 555, 563 n.6 (6th Cir. 2020); *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 218-19 & n.8 (3d Cir. 2018).

"final order of removal." 8 U.S.C. § 1252(a)(1). As *Nasrallah* recognized, the INA provides a specific definition for that term in § 1101(a)(47). *See Nasrallah*, 140 S. Ct. at 1691. To use the government's own words, "the definition of 'finality' in 1101(a)(47) ties finality to whether the agency's review has been completed." Transcript of Oral Argument, *supra*, at 10. Thus, in § 1231(a)(1) and § 1252 alike, "Congress focused our attention on the agency's review proceedings" as the decisive metric for determining the finality of a removal order. *Johnson*, 141 S. Ct. at 2284 (emphasis omitted). When it comes to an illegal reentrant, both the prior order of removal and DHS's decision to reinstate that order are definitive and unreviewable within the agency—and therefore final—before withholding-only proceedings even begin. *See id.* at 2288 ("[T]he order of removal is separate from and antecedent to a grant of withholding of removal.").

In reaching the opposite conclusion in a case predating *Johnson* and *Nasrallah*, the Tenth Circuit reasoned that an illegal reentrant's "reinstated removal order is not final *in the usual legal sense*" until the withholding-only proceedings conclude "because [the removal order] cannot be executed" until that time. *Luna-Garcia v. Holder*, 777 F.3d 1182, 1185 (10th Cir. 2015) (emphasis added) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945), and Webster's Third New International Dictionary 851 (1993)); *see also Ponce-Osorio v. Johnson*, 824 F.3d 502, 505-06 (5th Cir. 2016) (adopting this reasoning); *Jimenez-Morales v. U.S. Att'y Gen.*, 821 F.3d 1307, 1308 (11th Cir. 2016) (same). Yet by searching for a definition of finality outside the INA, the Tenth Circuit's decision ignores the clear implication of the INA's specific definition of finality, which ties finality to whether the agency's

24

review of the removal order is complete. *See* 8 U.S.C. § 1101(a)(47)(B).[20]

In sum, in his petition challenging DHS's decision to reinstate his 2016 order of removal and the immigration judge's subsequent decision to deny withholding-only relief, Bhaktibhai-Patel asks us to review "questions of law and fact ... arising from ... action[s] taken or proceeding[s] brought to remove [him] from the United States." 8 U.S.C. § 1252(b)(9). The INA permits us to exercise jurisdiction to decide such questions only if Bhaktibhai-Patel's petition allows us to exercise "judicial review" over "a final order [of removal]." *Id.* The petition, however, does not timely seek review of a final order of removal. Bhaktibhai-Patel filed this petition after the jurisdictional deadlines to review his 2016 order of removal and DHS's March 2019 decision to reinstate his prior order of removal had passed, and the immigration judge's withholding-only decision is not an order of removal at all.

---

[20] The Tenth Circuit purported to find further support for its position in the Supreme Court's test for "final agency action" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704. But that test also undermines the Tenth Circuit's position. Under the APA, "to be final, agency action must 'mark the consummation of the agency's decisionmaking process,' and it must determine 'rights or obligations' or occasion 'legal consequences.'" *Luna-Garcia*, 777 F.3d at 1185 (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). With respect to an illegal reentrant, the agency "consummat[es]" its "decisionmaking process" regarding the removal order before the withholding-only proceedings begin, and the order occasions unalterable "legal consequences" regardless of the outcome of those proceedings. *Bennett*, 520 U.S. at 178; *see Johnson*, 141 S. Ct. at 2285-88.

One might observe that our opinion produces a seemingly odd result, in that we recognize that an illegal reentrant may obtain judicial review of DHS's decision to reinstate a prior order of removal, *see Garcia-Villeda*, 531 F.3d at 150, but simultaneously hold that a reentrant generally may not obtain judicial review of subsequent withholding-only proceedings.[21] This oddity, however, results from questionable precedent that implicitly holds that a reinstatement decision itself qualifies as a final order of removal under § 1252.

That holding, which we have never explained, rests on an unstable foundation. Although DHS's reinstatement decision arguably "order[s] deportation" and therefore falls within the INA's definition of an order of removal, that decision may never "become final" because it cannot be appealed to the BIA. 8 U.S.C. § 1101(a)(47); *see* 8 C.F.R. § 241.8(a). Moreover, holding that DHS's reinstatement decision qualifies as an order of removal conflicts with 8 U.S.C. § 1231(a)(5), which provides for the "reinstate[ment]" of a "*prior* order or removal," not the issuance of a new one. 8 U.S.C. § 1231(a)(5) (emphasis added). Additionally, while we refer in this opinion to the prior order's reinstatement as a "reinstatement decision," § 1231(a)(5) does not authorize the agency to make a discretionary decision. Rather, once DHS determines that an individual is an illegal

---

[21] To be sure, review may be available when the withholding-only proceedings conclude within 30 days of DHS's reinstatement decision and the reentrant files a petition for review before that period expires. A court would likely have jurisdiction to review the withholding-only proceedings in that case if we accept our court's implicit conclusion that DHS's reinstatement decision itself qualifies as a final order of removal. *See Garcia-Villeda*, 531 F.3d at 150.

reentrant, "the prior order of removal *is reinstated* from its original date." 8 U.S.C. § 1231(a)(5) (emphasis added). Thus, § 1231(a)(5) does not condition the reinstatement of the prior order on any subsequent order that DHS may issue; the statute instead directs that the prior order is automatically reinstated by operation of law.

Some circuit courts have reasoned that § 1252 authorizes judicial review of reinstatement decisions because, even though "[r]einstatement orders are not literally orders of removal," such orders "give effect to previously issued [removal] orders." *Castro-Cortez v. INS*, 239 F.3d 1037, 1044 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas*, 548 U.S. 30; *see also Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002) (exercising jurisdiction to review a reinstatement decision despite concluding that "a reinstatement order is not literally an 'order of removal'"). Other courts have said that § 1252 grants jurisdiction to review a reinstatement decision because "[t]he reinstatement itself operates as the *functional equivalent* of a final order of removal." *Arevalo v. Ashcroft*, 344 F.3d 1, 9 (1st Cir. 2003) (emphasis added). Section 1252, however, provides jurisdiction only over a petition to review a "final order of removal," and § 1101(a)(47) provides a specific definition of that term. *See Nasrallah*, 140 S. Ct. at 1691. Neither § 1252 nor § 1101(a)(47) addresses the "functional equivalent" of an order of removal, *Arevalo*, 344 F.3d at 9, or an order that "give[s] effect to previously issued [removal] orders," *Castro-Cortez*, 239 F.3d at 1044. An order is either a "final order of removal" or it is not.[22]

---

[22] Notably, the Supreme Court in *Johnson* declined to endorse our decision in *Garcia-Villeda* and the other cases noted here. *See Johnson*, 141 S. Ct. at

27

# IV

We hold today that the INA does not permit judicial review of illegal reentrants' withholding-only decisions in some cases. We so hold despite the "strong presumption favoring judicial review of administrative action." *Salinas v. U.S. R.R. Ret. Bd.*, 141 S. Ct. 691, 698 (2021). "The presumption favoring judicial review of administrative action is just that—a presumption." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984). The presumption applies only in the presence of "ambiguity" and recedes when a "statute's language or structure forecloses judicial review." *Salinas*, 141 S. Ct. at 698 (internal quotation marks omitted). Here, as we have explained, the language and structure of §§ 1101(a)(47) and 1252 foreclose judicial review of withholding-only decisions.[23]

To be sure, when Congress seeks to "preclude judicial review of constitutional claims," we "require [a] heightened showing" of clear congressional intent "in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988). This consideration does not undermine our reading of the statute because an illegal reentrant challenging a

---

2285 n.6 ("express[ing] no view on whether" cases such as these "are correct").

[23] This result is not surprising given the statutory purpose to provide for the summary removal of illegal reentrants. *See* 8 U.S.C. § 1231(a)(5) (providing that a reinstated order of removal "is not subject to being reopened or reviewed" and that "the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry").

withholding-only decision does not have a "colorable constitutional claim." *Webster*, 486 U.S. at 603.

The Ninth Circuit strained to interpret § 1252 as conferring jurisdiction to review withholding-only decisions based on its view that "the Suspension Clause unquestionably requires some judicial intervention in deportation cases." *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 958 (9th Cir. 2012) (internal quotation marks omitted). The Supreme Court, however, has recently confirmed that the Suspension Clause applies only when an alien "contest[s] the lawfulness of [his] restraint" and "seek[s] release." *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1969-70 (2020); *see also id.* at 1969 ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.") (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). As in *Thuraissigiam*, the Suspension Clause plays no role in challenges to withholding-only decisions because aliens in such challenges do not "seek release" from custody or "contest[] the lawfulness of [a] restraint" the government imposes. *Id.* at 1969-70. Rather, withholding-only decisions, and any challenges to those decisions, concern only the alien's removal to a specific country. While an illegal reentrant is subject to § 1231(a)'s detention provisions during the pendency of his withholding-only proceedings, *see Johnson*, 141 S. Ct. at 2284, "the Government is happy to release him—provided the release occurs in the cabin of a plane bound for" the country designated in the reinstated removal order. *Thuraissigiam*, 140 S. Ct. at 1970.

Illegal reentrants also lack colorable due process claims in the context of withholding-only decisions. To be sure, the Supreme Court has generally held that "the Fifth Amendment entitles aliens to due

29

process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *Yamataya v. Fisher* (*Japanese Immigrant Case*), 189 U.S. 86, 100-01 (1903)). [24] The procedural due process analysis proceeds in two steps. First, "a plaintiff must show a deprivation of a protected life, liberty or property interest." *Bross v. Turnage*, 889 F.2d 1256, 1257 (2d Cir. 1989). Second, we "look at the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)," to determine whether the procedure provided is constitutionally sufficient. *Abdullah v. INS*, 184 F.3d 158, 164 (2d Cir. 1999).

An alien's due process claim arising from removal proceedings—like all due process claims—must relate to an alleged deprivation of a "liberty or property interest." *Yuen Jin v. Mukasey*, 538 F.3d 143, 156 (2d Cir. 2008); *see also* U.S. Const. amend. V ("No person shall … be deprived of life, liberty, or property, without due process of law."). For that reason, we have held that aliens cannot raise due process challenges "in the context of discretionary relief," *Yuen Jin*, 538 F.3d at 157, because "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion," *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Accordingly, "aliens have no constitutionally-protected 'liberty or property interest' in … a discretionary grant of relief for which they are otherwise statutorily ineligible." *Hernandez v. Sessions*, 884 F.3d 107, 112 (2d Cir. 2018).

Withholding-only proceedings involve mandatory relief. But illegal reentrants still must identify a liberty or property interest protected by due process before they can claim that the procedures

---

[24] This general rule, however, has limited application to "an alien at the threshold of initial entry." *Thuraissigiam*, 140 S. Ct. at 1964.

provided in such a proceeding are constitutionally deficient. Illegal reentrants possess no "right to be and remain in the United States." *Japanese Immigrant Case*, 189 U.S. at 101. They have already been ordered removed. Furthermore, we doubt that illegal reentrants possess a protected interest in statutory withholding or CAT relief. A right to such relief is not "enumerated in the Bill of Rights." *Obergefell v. Hodges*, 576 U.S. 644, 663 (2015). Nor can such relief be said to have "always been [an aspect] of the liberty protected by the Due Process Clause," *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992), considering that these forms of immigration relief did not exist until 1980 and 1998, respectively, *see* Refugee Act of 1980, Pub. L. No. 96-212, § 203(e), 94 Stat. 102, 107 (enacting statutory withholding); Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G., § 2242(b), 112 Stat. 2681-761, 2681-822 (directing executive agencies to implement the CAT).[25]

We have previously said that a protectable interest cannot be based on the United Nations Protocol Relating to the Status of Refugees or the CAT. *See Yuen Jin*, 538 F.3d at 159 ("[N]either the Protocol nor the CAT are self-executing treaties. They therefore do not create private rights that petitioners can enforce in this court beyond those contained in their implementing statutes and regulations (i.e., the INA)."). We presume that "international agreements, even those directly benefiting private persons, generally do not create private rights," *Medellin v. Texas*, 552 U.S. 491, 506 n.3 (2008), and in any event "clear congressional action supersedes prior treaty obligations to the

---

[25] Statutory withholding and CAT relief also do not fall within the narrow category of "certain personal choices central to individual dignity and autonomy" that the Supreme Court has come to recognize as protected "fundamental liberties." *Obergefell*, 576 U.S. at 663.

extent they are inconsistent," *Guaylupo-Moya v. Gonzales*, 423 F.3d 121, 136 (2d Cir. 2005). The government follows withholding-only proceedings for illegal reentrants pursuant to its understanding of its treaty obligations, but that procedure cannot give illegal reentrants a right that Congress has specifically denied. *See* 8 U.S.C. § 1231(a)(5).

Although "we have suggested in dicta that an alien's interest" in statutory withholding "may well enjoy some due process protection not available to an alien claiming only admission," *Yuen Jin*, 538 F.3d at 157 (citing *Augustin v. Sava*, 735 F.2d 32, 37 (2d Cir. 1984), and *Yiu Sing Chun v. Sava*, 708 F.2d 869, 877 (2d Cir. 1983)), those dicta do not apply to illegal reentrants. In these cases, we recognized that "constitutionally protected liberty or property interests may have their source in positive rules of law creating a substantive entitlement to a particular government benefit." *Augustin*, 735 F.2d at 37; *see also Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("[A] person's liberty is equally protected, even when the liberty itself is a statutory creation of the State."). We then suggested that "8 U.S.C. § 1253(h)," the original statutory withholding provision, "creates a substantive entitlement to relief from deportation or return to" a country in which an alien will face persecution. *Augustin*, 735 F.2d at 37; *see also Yiu Sing Chun,* 708 F.2d at 877 (stating that "a refugee who has a well-founded fear of persecution in his homeland has a protectable interest recognized by … statute"). But while the INA might create a substantive entitlement to statutory withholding and CAT relief for aliens in general, it explicitly denies any such entitlement to illegal reentrants, specifying

32

that illegal reentrants are "not eligible and may not apply for any relief" the INA would otherwise provide. 8 U.S.C. § 1231(a)(5).[26]

Even if illegal reentrants had a protected interest in withholding-only relief, however, the procedures provided under the applicable regulations are "constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). "Due process is flexible, … and it calls for such procedural protections as the particular situation demands." *Jennings*, 138 S. Ct. at 852. Illegal reentrants who apply for

---

[26] Some courts have suggested that § 1231(a)(5)'s bar does not apply to withholding of removal because withholding of removal is a form of "protection" rather than "relief." *Garcia v. Sessions*, 856 F.3d 27, 39 (1st Cir. 2017) (applying *Chevron* deference to such an interpretation); *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 489 (5th Cir. 2015). Yet the ordinary meaning of "relief"—any "redress or benefit," *United States v. Denedo*, 556 U.S. 904, 909 (2009)—plainly encompasses withholding of removal. The conference report for the IIRIRA states that § 1231(a)(5) renders an illegal reentrant "not eligible to apply for any relief under the INA" and shortly thereafter refers to withholding of removal as a "form of relief." H.R. Rep. 104-828, at 216 (1996) (Conf. Rep.). This court has also described withholding of removal as a form of relief. *See, e.g.*, *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018) ("Withholding of removal is a mandatory form of relief."); *Shu Wen Sun v. BIA*, 510 F.3d 377, 381 (2d Cir. 2007) ("A petitioner who has not personally experienced persecution on a protected ground is ineligible to obtain withholding of removal relief.") (internal quotation marks and alteration omitted). Accordingly, "neither statute nor caselaw supports any argument that either asylum or withholding of removal is not in fact 'relief.'" *Cazun v. Att'y Gen.*, 856 F.3d 249, 256 n.13 (3d Cir. 2017); *see also R-S-C v. Sessions*, 869 F.3d 1176, 1184 n.8 (10th Cir. 2017). There is no reason to think that § 1231(a)(5) does not apply to illegal reentrants' eligibility for withholding of removal relief. The statute providing aliens the right to apply for asylum is as categorical as the statute providing withholding relief, yet this court has already held in *Herrera-Molina* that illegal reentrants are ineligible to apply for asylum. 597 F.3d at 139; *see also* 8 U.S.C. § 1158(a)(1).

withholding-only relief receive at least two levels of review—from an asylum officer and an immigration judge—within the Executive Branch. 8 C.F.R. § 208.31. We are not persuaded that due process requires a third level of judicial review. *See Mathews*, 424 U.S. at 348 (noting that procedural due process requires only "that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case") (internal quotation marks and citation omitted).

Finally, we note that Congress's decision to preclude judicial review for withholding-only decisions raises no due process concerns with respect to illegal reentrants, such as Bhaktibhai-Patel, who have failed to effect an entry into the country. "While aliens who have established connections in this country have due process rights in deportation proceedings ... Congress is entitled to set the conditions for an alien's lawful entry into this country." *Thuraissigiam*, 140 S. Ct. at 1963-64. "[A]s a result," aliens who have not "effected an entry" into the United States have "only those rights regarding admission that Congress has provided by statute" and "cannot claim any greater rights under the Due Process Clause." *Id.* at 1964, 1982-83.

The Supreme Court has explained that "an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry.'" *Id.* at 1982. Bhaktibhai-Patel was apprehended the same day he unlawfully reentered the country. [27] Aliens such as

---

[27] The alien in *Thuraissigiam*, whom the Supreme Court held not to have "effected an entry," "succeeded in making it 25 yards into U.S. territory before he was caught." *Thuraissigiam*, 140 S. Ct. at 1982. We do not understand *Thuraissigiam*'s holding to be confined to that specific scenario.

34

Bhaktibhai-Patel do not "effect[] an entry" into the United States and therefore "ha[ve] only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 140 S. Ct. at 1982-83. And if those rights do not include access to judicial review for withholding-only proceedings, such aliens "cannot claim any greater rights under the Due Process Clause." *Id.* at 1964.

## CONCLUSION

Illegal reentrants are "not eligible and may not apply for any relief under" the INA and "shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5). While the government nevertheless offers a process for illegal reentrants to pursue statutory withholding and CAT relief, the INA does not permit us review agency withholding-only decisions unless we do so while reviewing a final order of removal. Because Bhaktibhai-Patel seeks review of withholding-only decisions but no final order of removal subject to judicial review, we **DISMISS** his petition for lack of jurisdiction.

---

The Supreme Court cautioned that adopting too permissive a standard for effecting an entry "would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." *Id.* at 1983 (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)).