# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 30, 2022

Lyle W. Cayce
Clerk

No. 20-61133

Hortencia Ruiz-Perez,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

---

Petition for Review of an Order of
the Board of Immigration Appeals
No. A 028 896 887

---

Before Smith, Duncan, and Oldham, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Does cancelation of an alien's removal order count as immigration "relief"? Cancelation of removal provides benefits superior to asylum's benefits—which we have deemed relief. Cancelation, it follows, is also relief.

Hortencia Ruiz-Perez petitions for review of a decision that she is ineligible to have her removal order canceled. But Ruiz-Perez is ineligible for any relief because her removal order was reinstated after she illegally re-entered the country following a prior removal. Having concluded that cancelation of removal is relief, we deny her petition for review.

No. 20-61133

I.

A.

Ruiz-Perez is a Mexican citizen who seeks permanent U.S. residence. She first came to the United States in 1999. At the border, she gave immigration officers a false name. The officers arrested her and returned her to Mexico.

The next day, Ruiz-Perez again tried to cross the border. She told immigration officers she was an American citizen. The officers knew she was lying, so they arrested her again. This time, the government charged her with "Attempted Illegal Entry by False and Misleading Representation." She pleaded guilty, and a federal court sentenced her to 75 days' imprisonment.

The Immigration and Naturalization Service ordered Ruiz-Perez removed. It deemed her inadmissible because she had lied about having U.S. citizenship. It removed Ruiz-Perez to Mexico after her incarceration.

Two years later, Ruiz-Perez illegally reentered the United States. She settled with her husband—a lawful permanent U.S. resident—and oldest son near San Antonio. They lived there together for about seven years and had two more children.

Ruiz-Perez says she and her children endured serious abuse from her husband. Most of the abuse she recounts happened in the United States, though she describes two incidents in Mexico. In one of the U.S. incidents, Ruiz-Perez's youngest son suffered a serious injury.

After that, Ruiz-Perez separated from her husband and has not lived with him, although she sometimes sees him in public in the San Antonio area, where she has continued to live for more than a decade.

A few years ago, however, the Bexar County Sheriff's Office arrested Ruiz-Perez for assaulting her neighbor's children during a property-line

dispute. The district attorney charged Ruiz-Perez with a crime but later dismissed the charges after he could not convince a witness to testify. The arrest alerted immigration officials to Ruiz-Perez's presence in the United States.

The Department of Homeland Security reinstated Ruiz-Perez's removal order. It concluded she was eligible for reinstatement because she was an "alien who has illegally reentered the United States after having previously been removed." It told Ruiz-Perez she could "contest [that] determination by making a written or oral statement to an immigration officer" but said she had no "right to a hearing before an immigration judge."

## B.

Ruiz-Perez never contested that reinstatement order. Instead, she applied for two alternative procedures. *First*, she asked the Executive Office for Immigration Review to cancel her removal order and to adjust her immigration status to make her a lawful permanent resident. *Second*, she requested withholding of removal and protection under the Convention Against Torture ("CAT"). An immigration judge ("I.J.") reviewed both applications.

During an initial hearing, the government claimed that Ruiz-Perez was ineligible for cancelation of removal because she was subject to a reinstated removal order. The I.J. allowed Ruiz-Perez to testify in support of her application for withholding of removal and directed further briefing on the cancelation issue. The government then moved to pretermit Ruiz-Perez's application for cancelation.

Ruiz-Perez countered that, because of her husband's abuse, the Violence Against Women Act ("VAWA") makes her eligible for cancelation even after a reinstated removal order. VAWA, she said, prescribes rules "different than those for general permanent or nonpermanent residents." She pointed to language from a 2006 amendment that explains that immigration officials "shall continue to have discretion to consent to an alien's reapplication for

admission after a previous order of removal, deportation, or exclusion."[1]

The I.J. denied Ruiz-Perez's applications for cancelation and withholding of removal. He explained that the 2006 amendment is irrelevant because an application for cancelation is not a reapplication for admission. He concluded that he lacked jurisdiction to decide Ruiz-Perez's cancelation application and so did not "discuss" it. Separately, he reasoned that Ruiz-Perez was ineligible for withholding of removal or CAT protection. Accordingly, he ordered her removed to Mexico.

Ruiz-Perez appealed to the Board of Immigration Appeals ("BIA") on both grounds. Regarding the jurisdictional holding, she said an application for cancelation of removal should be treated as a reapplication for admission.

The BIA dismissed the appeal. It agreed with the I.J. that he lacked jurisdiction to consider Ruiz-Perez's cancelation application. But it offered a different reason: Ruiz-Perez is ineligible to apply for cancelation because the INA forbids an alien subject to a reinstated removal order to receive any immigration "relief." It also concluded that the I.J.'s factfindings supported his denial of Ruiz-Perez's application for withholding of removal and CAT protection.

Ruiz-Perez petitioned this court for review. She abandons her bid for withholding of removal and challenges only the BIA's conclusion that she is ineligible for cancelation of removal. She asks that we vacate the BIA's decision and remand for consideration of whether she satisfies the remaining criteria for cancelation under VAWA.

---

[1] 8 U.S.C. § 1229b note (Discretion To Consent to an Alien's Reapplication for Admission). Statutory notes are binding law. *SEC v. Hallam*, 42 F.4th 316, 335 n.76 (5th Cir. 2022).

No. 20-61133

## II.

We begin with a brief note on our jurisdiction.  We can review "final order[s] of removal."  8 U.S.C. § 1252(a)(1).  But a petitioner must file a petition "not later than 30 days after the date of the final order of removal." § 1252(b)(1).  So the question, "What qualifies as a final order of removal?" is central to our jurisdiction.

We have held that a reinstatement order is not final until an application for withholding of removal or CAT protection is decided.  *Ponce-Osorio v. Johnson*, 824 F.3d 502, 505–07 (5th Cir. 2016) (per curiam).  More recently, however, the Supreme Court called that holding into question.  We now know an order denying CAT protection does not count as a "final order of removal because it is not an order 'concluding that the alien is deportable or ordering deportation.'"  *Nasrallah v. Barr*, 140 S. Ct. 1683, 1691 (2020) (quoting 8 U.S.C. § 1101(a)(47)(A)).  Nor do such orders "merge into" the final removal order because they do not "affect the validity of the final order"— they may change only the "country of removal."  *Ibid.*

The story is the same for orders that deny withholding of removal. Those are not "final order[s] of removal" because granting withholding leaves a removal order "in full force."  *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2285 (2021).  The government retains "numerous options" for removing an alien subject to a withholding order.  *Ibid.*  So an application for withholding of removal does not mean that a removal decision is still "pending." *Id.* at 2286.  Instead, "removal orders and withholding-only proceedings address two distinct questions," and "the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings." *Id.* at 2287.

*Nasrallah* and *Johnson* may mean that a petitioner who wishes to challenge a reinstatement order in federal court must file within 30 days of the

reinstatement order—without waiting for withholding-only proceedings to conclude. That's what the Second Circuit recently held in *Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 190–95 (2d Cir. 2022).

But even that conclusion relies on the premise that a reinstatement order is a "final order of removal" under Section 1252. *Id.* at 195–96. Again, we have held that it is. *Garcia v. Holder*, 756 F.3d 885, 890 (5th Cir. 2014); *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002).

That conclusion, too, may require reassessment in the wake of *Nasrallah* and *Johnson*. One might think that a reinstatement order is not a "final order concluding that the alien is deportable or ordering deportation," *Nasrallah*, 140 S. Ct. at 1691 (quotation omitted), because a reinstatement order presupposes a "prior order of removal" and because the statute does not authorize a new removal order—it "reinstate[s] [one] from its original date," 8 U.S.C. § 1231(a)(5).[2] And the removal occurs "under the prior order." *Ibid*.

Even if that's true, a panel of this court would need to conclude that *Nasrallah* and *Johnson* "unequivocally overrule[d] prior precedent" before applying new jurisdictional rules to our review of reinstatement orders. *Bonvillian Marine Serv. v. Pellegrin* (*In re Bonvillian Marine Serv., Inc.*), 19 F.4th 787, 792 (5th Cir. 2021) (quotation omitted). That standard sets a high bar—our rule of orderliness is "strict and rigidly applied." *Ibid*.

We flag these questions for future litigants because, although we are obliged to "assess our own jurisdiction before exercising [our] judicial power," *Mejia v. Barr*, 952 F.3d 255, 261 (5th Cir. 2020) (quotation omitted), adversarial briefing helps. And soon we must decide whether to reassess the

---

[2] *See also Ojeda-Terrazas*, 290 F.3d at 295 ("[A] reinstatement order is not literally an 'order of removal' because it merely reinstates a previously issued order of removal or deportation.").

No. 20-61133

extent of our jurisdiction to hear challenges to reinstatement decisions.

But today is not the day. Ruiz-Perez does not challenge her reinstatement order. Instead, she says the BIA legally erred in deciding that she was ineligible to be considered for cancelation of removal. Such decisions count as "final orders of removal" within our jurisdiction. *Trejo v. Garland*, 3 F.4th 760, 766, 773 (5th Cir. 2021) (quoting 8 U.S.C. § 1252(a)(1)), *abrogated on other grounds*, *Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022). Ruiz-Perez filed her petition within 30 days of the BIA's ineligibility decision so, under *Trejo*, Section 1252(b)(1) presents no obstacle to our review.

Accordingly, we have jurisdiction to review Ruiz-Perez's petition. On to the merits.

### III.

Ruiz-Perez applied for cancelation of removal under the "[s]pecial rule for battered spouse[s]" codified at 8 U.S.C. § 1229b(b)(2)(A). Cancelation under that rule has five statutory requisites. *See* § 1229b(b)(2)(A)(i)–(v). But those requisites aren't at issue here because the BIA never reached those questions. Our review is "confined to the BIA's analysis and reasoning." *Vazquez v. Sessions*, 885 F.3d 862, 872 (5th Cir. 2018).

The BIA held that another statute—the reinstatement statute, codified at 8 U.S.C. § 1231(a)(5)—disqualifies Ruiz-Perez from cancelation. It relied on language that says aliens subject to reinstated removal orders are "not eligible and may not apply for any relief" under the immigration laws. *Ibid*. We focus on the narrow question whether that holding is right.

Ruiz-Perez responds to the BIA by pointing to two statutes that she says give the I.J. discretion to decide her application for special-rule cancelation. *First*, she again relies on the 2006 amendment recognizing that officials "shall continue to have discretion to consent to an alien's reapplication for

admission after a previous order of removal."[3]  *Second*, she observes that the inadmissible-aliens statute permits the "Secretary of Homeland Security" to waive inadmissibility for some "VAWA self-petitioner[s]." § 1182(a)-(9)(C)(iii).  That statute, she says, "explicitly permits the I.J. to consider a VAWA cancellation of removal application."  (Emphasis deleted and capitalization altered.)

Our analysis proceeds in two parts.  *First*, we examine the relationship between the reinstatement statute and the two statutes on which Ruiz-Perez relies and conclude that the reinstatement statute controls.  *Second*, we analyze whether cancelation of removal is a form of relief forbidden by the reinstatement statute and conclude that it is.

## A.

Implicit in Ruiz-Perez's position is the notion that VAWA, its amendments, and the inadmissible-aliens statute supersede any limitation on relief that the reinstatement statute otherwise imposes.  She has never contradicted the government's interpretation of the reinstatement statute.  Instead, she says VAWA represents an "exception[ ]" to the usual rule.  That theory is unsupportable.

The reinstatement statute speaks in absolute terms:  "If . . . an alien has reentered the United States illegally after having been removed . . . , the alien is not eligible and may not apply for any relief under this chapter."  8 U.S.C. § 1231(a)(5).  That section is a "statutory limit" on the "possible relief from a removal order."  *Ramirez-Mejia v. Lynch*, 794 F.3d 485, 490 (5th Cir. 2015) (quotation omitted).

---

[3] 8 U.S.C. § 1229b note (Discretion To Consent to an Alien's Reapplication for Admission).

None of the statutes Ruiz-Perez cites contains rights-creating language that could override the reinstatement statute's blanket prohibition.

By its own terms, the 2006 amendment did nothing new; it notes that executive officials "*continue* to have discretion" to grant relief.[4] That section of the bill followed an amendment that expanded the definition of "[e]xceptional [c]ircumstances" to include "extreme" domestic abuse.[5] That definition limits when an alien may be excused for failing to appear. *See* 8 U.S.C. § 1229a(b)(7). One consequence of an unexcused failure to appear is that an alien is "not . . . eligible" for some forms of "discretionary relief." *Ibid.*

In that context, the portion of the amendment Ruiz-Perez cites may reflect Congress's desire to clarify that even if an alien's situation does not qualify as an "exceptional circumstance[ ]",[6] he is not completely out of luck: He may "reappl[y] for admission," even if he has been "remov[ed]", and immigration officials "continue to have discretion" to consider his application.[7] In any event, that amendment says nothing about what happens when a removal order is reinstated.

The other statute on which Ruiz-Perez principally relies is even less relevant. In general, an alien is "ineligible to receive visas and ineligible to be admitted to the United States"[8] if he "has been ordered removed" and he "enters or attempts to reenter the United States without being admitted." *Id.*

---

[4] *Id.* (emphasis added).

[5] Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 813(a)(1), 119 Stat. 2960, 3057–58 (2006); *see also* 8 U.S.C. § 1229a(e)(1).

[6] 8 U.S.C. § 1229a(e)(1).

[7] *Id.* § 1229b note (Discretion To Consent to an Alien's Reapplication for Admission).

[8] *Id.* § 1182(a).

No. 20-61133

§ 1182(a)(9)(C)(i).  But "[t]he Secretary of Homeland Security may waive" that limitation for some "VAWA self-petitioner[s]."  *Id.* § 1182(a)(9)(C)(iii).

If it were true that the waiver-of-inadmissibility statute "explicitly permits the I.J. to consider a VAWA cancellation of removal application,"[9] one might expect the statute to mention cancelation applications.  But it doesn't.  "VAWA self-petitioner" is a defined term, and it concerns aliens who qualify for relief under seven enumerated statutes—but not the cancelation-of-removal statute.  *See* 8 U.S.C. § 1101(a)(51)(A)–(G).  Accordingly, "special rule applicants," as the Ninth Circuit has observed, "are not VAWA self-petitioners."  *Garcia-Mendez v. Lynch*, 788 F.3d 1058, 1062 (9th Cir. 2015).

Moreover, like the 2006 amendment, the waiver-of-admissibility statute gives the executive branch ultimate discretion whether to grant relief, even for an applicant who satisfies the statutory criteria.[10]  The story is the same for the cancelation-of-removal statute—special rule or no.[11]

It's significant that all those statutes rely on executive discretion.  That attribute dispels any possible inference that the only limitations on cancelation-of-removal are contained in the cancelation-of-removal statute.  *See Ramirez-Mejia*, 794 F.3d at 490.

The reinstatement statute, by contrast, leaves no discretion.  Once an alien satisfies the criteria for reinstatement, the order "is reinstated," the alien "is not eligible and may not apply for any relief," and the alien "*shall* be removed."  8 U.S.C. § 1231(a)(5) (emphasis added).  Accordingly, that mandatory language is a "clear limitation" on another portion of the immigration

---

[9] (Capitalization altered and emphasis deleted.)

[10] § 1182(a)(9)(C)(iii) ("The Secretary . . . *may* waive . . . ." (emphasis added)).

[11] § 1229b(b)(2)(A) (The Attorney General *may* cancel removal . . . ." (emphasis added)); § 1229b(b)(1)(A) (same).

laws even though Congress did not "amend[ ] another section specifically dealing with [that] subject." *Ramirez-Mejia*, 794 F.3d at 490.

So too here. The reinstatement statute applies to all aliens who have "reentered the United States illegally after having been removed." 8 U.S.C. § 1231(a)(5). That group includes Ruiz-Perez, as she concedes. She cites no statute that confers on her a more specific right to cancelation of removal that could override the reinstatement statute. In fact, none of the statutes on which she relies even *mentions* reinstatement orders.

The reinstatement statute thus controls. Ruiz-Perez's appeal turns on whether cancelation of removal is a form of "relief" precluded by that statute. We turn now to that question.

## B.

In *Ramirez-Mejia*, 794 F.3d at 489–90, we held that the reinstatement statute's bar on "any relief" "broadly denies all forms of redress from removal" (quoting § 1231(a)(5)). We adopted a definition of relief that includes "any redress or benefit provided by a court." *Id.* at 489 (quotation omitted). And we noted that the term "any" connotes an "expansive meaning," especially when "not qualified by restrictive language." *Id.* at 490 (quotation omitted).

Asylum was the form of immigration benefit at issue in *Ramirez-Mejia*. We explained that "[a]sylum is a form of redress from removal because . . . it prevents the removal from going forward." *Id.* at 489. We contrasted asylum with withholding of removal and CAT protection, noting that the latter are merely "forms of protection." *Ibid.* That's because they do not "prevent[ ] the removal from going forward." *Ibid.* They just prevent removal to a particular country. *Nasrallah*, 140 S. Ct. at 1691; *Johnson*, 141 S. Ct. at 2286.

Cancelation of removal is more like asylum than like withholding of

removal. In fact, cancelation's benefits are superior to asylum's.

When the government grants an alien asylum, he gets three benefits. *First*, he cannot be removed to his "country of nationality" or, if he has "no nationality," his "last habitual residence." 8 U.S.C. § 1158(c)(1)(A). *Second*, he can work in the United States. § 1158(c)(1)(B). *Third*, he may "travel abroad"—as long as the Attorney General consents. *Id.* § 1158(c)(1)(C).

All those benefits are conditional. Asylum "does not convey a right to remain permanently in the United States." § 1158(c)(2). If circumstances change, the Attorney General may terminate asylum. *Ibid.* And that may result in the alien's removal. § 1158(c)(3).

Cancelation of removal is permanent. A successful application means that an alien is "lawfully admitted for permanent residence" in the United States. § 1229b(b)(2)(A). Unlike asylum, there are no strings attached. *See* § 1101(a)(20).

Cancelation's permanence means that it gives an alien "redress or benefit[s]." *Ramirez-Mejia*, 794 F.3d at 489 (quotation omitted). Not only does it "prevent[ ] the removal from going forward," *ibid.*, but it also prevents it from restarting. And, compared to asylum, it gives the alien greater autonomy in his U.S. residence. So it follows from *Ramirez-Mejia* that cancelation counts as "relief" under the reinstatement statute.

Ordinary use of the term "relief" bolsters that conclusion. Take, for example, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). There, the Court did not consider whether cancelation counts as relief, so its discussion of the subject is neither a holding nor *dictum*. But it twice described cancelation as "relief." *See id.* at 42 n.9; 44 n.10. At least two of our sister circuits have

done the same.[12]  So have we.  *Trejo*, 3 F.4th at 766.  And so do other portions of the immigration laws.[13]

Accordingly, we conclude that cancelation of removal is a form of "relief" unavailable to aliens who are subject to reinstatement orders under 8 U.S.C. § 1231(a)(5).

\*    \*    \*

The BIA correctly determined that Ruiz-Perez is ineligible to be considered for cancelation of removal.  She has never challenged the order reinstating her removal.  The reinstatement statute prevents her from getting any immigration "relief."  And cancelation of removal is a form of relief.

It follows that the petition for review is DENIED.

---

[12] *See Garcia v. Sessions*, 856 F.3d 27, 36 nn. 7, 8 (1st Cir. 2017); *Rodriguez v. Gonzales*, 451 F.3d 60, 61 (2d Cir. 2006) (per curiam).

[13] *See, e.g.*, 8 U.S.C. § 1252(a)(2)(B) (providing that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b").

No. 20-61133

ANDREW S. OLDHAM, *Circuit Judge*, dissenting:

The question presented is whether we have jurisdiction over Hortencia Ruiz-Perez's petition for review of a reinstatement order. As far as I can tell, we do not. I therefore respectfully dissent.

I.

I (A) start with background on removal orders. Then I (B) turn to reinstatement orders.

A.

Removal orders first. "In the deportation[1] context, a final 'order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah v. Barr*, 140 S. Ct. 1683, 1691 (2020) (quoting 8 U.S.C. § 1101(a)(47)(A)). For § 1101(a)(47)(A), the Supreme Court has explained that "final orders of removal encompass only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal." *Nasrallah*, 140 S. Ct. at 1691. All "rulings that affect the validity of the final order of removal merge into the final order of removal for purposes of judicial review." *Ibid.*

---

[1] Under the pre-1996 INA, proceedings brought against aliens attempting to enter the country were called "exclusion proceedings," and proceedings brought against aliens already present in the United States were called "deportation proceedings." In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996) (codified as amended in scattered sections of Title 8 of the United States Code). After IIRIRA, both kinds of proceedings are simply called "removal proceedings." *See* IIRIRA § 309(d)(2) ("[A]ny reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation."); *see also Ali v. Barr*, 951 F.3d 275, 277 n.1 (5th Cir. 2020) (discussing the change in nomenclature); *United States v. Vargas-Soto*, 35 F.4th 979, 985 n.1 (5th Cir. 2022) (same).

No. 20-61133

Orders on *withholding* of removal are not removal orders. That's because there are two ways to seek withholding, but neither affects the removability of an alien. First, the alien may seek statutory withholding under 8 U.S.C. § 1231(b)(3)(A), which prevents the alien's removal to a country where the "alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2282 (2021) (quoting § 1231(b)(3)(A)). Second, "the alien may seek withholding under regulations implementing the Convention Against Torture [treaty], which prohibits removal of an alien to a country where the alien is likely to be tortured." *Ibid.* Under either scenario, the alien remains removable. That's because "withholding-only relief is country-specific. It relates to *where* an alien may be removed. It says nothing, however, about the antecedent question *whether* an alien is to be removed from the United States." *Id.* at 2286.

It therefore follows that a withholding determination neither constitutes a removal order nor merges with one.

B.

Next, reinstatement orders. "Congress has created an expedited process for aliens who reenter the United States without authorization after having already been removed." *Id.* at 2282. The relevant statute provides:

> (5) Reinstatement of removal orders against aliens illegally reentering
>
> > If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the

15

> alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). DHS promulgated regulations setting out the process for reinstating a prior order of removal. "In short, the agency obtains the alien's prior order of removal, confirms the alien's identity, determines whether the alien's reentry was unauthorized, provides the alien with written notice of its determination, allows the alien to contest that determination, and then reinstates the order." *Johnson*, 141 S. Ct. at 2282.

The reinstatement statute applies "to all illegal reentrants, and it explicitly insulates the removal orders from review, while also generally foreclosing discretionary relief from the terms of the reinstated order." *Ibid.* (quotation omitted). "It does not, however, preclude an alien from pursuing withholding-only relief to prevent DHS from executing his removal to the particular country designated in his reinstated removal order." *Ibid.*

To seek withholding-only relief, the alien must express to DHS a fear of returning to the country of removal. 8 C.F.R. §§ 208.31(a), 1208.31(a). DHS will then refer the alien to an asylum officer for a reasonable-fear determination. *Id.* §§ 208.31(b), 1208.31(b). If the asylum officer concludes that the alien has a reasonable fear, the officer will refer the matter to an IJ for initiation of withholding-only proceedings. *Id.* §§ 208.31(e), 1208.31(e). Those proceedings are "limited to a determination of whether the alien is eligible for withholding or deferral of removal," so "all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." *Id.* §§ 208.2(c)(3)(i), 1208.2(c)(3)(i); *see also Johnson*, 141 S. Ct. at 2283. The IJ's final decision on withholding can be appealed to the BIA. 8 C.F.R. §§ 208.31(e), 1208.31(e).

Neither the asylum officer's reasonable-fear determination nor the BIA's withholding-only-proceedings decision is an order of removal. Again, those decisions cannot affect the validity of the underlying removal order. They only "relate[] to *where* an alien may be removed"; they say "nothing . . . about the antecedent question *whether* an alien is to be removed from the United States." *Johnson*, 141 S. Ct. at 2286.

## II.

I now turn to our jurisdiction in this case. Section 1252 grants circuit courts jurisdiction to "review . . . a final order of removal." 8 U.S.C. § 1252(a)(1). It also specifies that "the sole and exclusive means for judicial review of an order of removal" is through "a petition for review filed . . . in accordance with this section." § 1252(a)(5). Section 1252 also has a "zipper clause" that states that "all questions of law or fact . . . arising from any action taken or proceeding brought to remove an alien" must be consolidated and "available only in judicial review of a final order under this section." § 1252(b)(9). So for us to have direct-review jurisdiction, an alien must timely file in our court a petition to review *a final order of removal*.

We lack jurisdiction here for two alternative reasons: First, a reinstatement decision is not a "final order of removal" under 8 U.S.C. § 1252(a)(1). Second, even if a reinstatement decision is an "order of removal," Ruiz-Perez filed her petition for review later than 30 days after the removal order became final and thus was untimely. *See* § 1252(b)(1) ("The petition for review must be filed not later than 30 days after the date of the final order of removal."); *Luna-Garcia De Garcia v. Barr*, 921 F.3d 559, 563 (5th Cir. 2019) (deadline is jurisdictional). I address them in turn and end by rejecting any remaining counterarguments.

No. 20-61133

A.

A reinstatement decision is not an order of removal, so we lack jurisdiction here. I (1) explain the best reading of the applicable provisions. I then (2) explain why the rule of orderliness does not bar adopting the best interpretation.

1.

The best reading of the applicable provisions is that a reinstatement decision is not an order of removal.

First consider the INA's distinction between removal orders and reinstatement decisions. The INA specifies that "a 'final order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah*, 140 S. Ct. at 1690 (quoting 8 U.S.C. § 1101(a)(47)(A)). Section 1231(a)(5) then makes clear that a reinstatement decision is not that: It's the "reinstate[ment]" of a "*prior* order of removal"—not the issuance of a new one. 8 U.S.C. § 1231(a)(5) (emphasis added). And § 1231(a)(5) also makes clear the removal occurs "under the *prior* order." *Ibid.* (emphasis added.) So the decision ordering the alien to be removed is the prior one and that alone.

Moreover, "an alien subject to a reinstated order of removal will not have any removal proceedings." *Johnson*, 141 S. Ct. at 2282–83. So as a matter of ordinary meaning, it would be odd for a reviewable removal order to come from a non-removal proceedings.

Some circuits (including ours) have concluded otherwise. But the opinions' rationales reinforce that a reinstatement decision is not an order of removal. For example, the Ninth Circuit (and ours) concluded that § 1252 authorizes judicial review of reinstatement decisions because, even though "[r]einstatement [decisions] are not literally orders of removal," such

No. 20-61133

decisions "give effect to previously issued [removal] orders." *Castro-Cortez v. INS*, 239 F.3d 1037, 1044 (9th Cir. 2001); *see also Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002) (exercising jurisdiction to review a reinstatement decision despite concluding that "a reinstatement [decision] is not literally an 'order of removal'"). Other circuits have said that § 1252 grants jurisdiction to review a reinstatement decision because "[t]he reinstatement itself operates as the functional equivalent of a final order of removal." *Arevalo v. Ashcroft*, 344 F.3d 1, 9 (1st Cir. 2003) (emphasis added). These circuits thus concede that reinstatement decisions are not removal orders. That alone pretermits our jurisdiction.

And it's not as if Congress gave us jurisdiction over things that are not-quite-but-perhaps-related-to removal orders. Section 1252 provides jurisdiction only over a petition to review a "final order of removal," and § 1101(a)(47) provides a specific definition of that term. Neither § 1252 nor § 1101(a)(47) addresses the "functional equivalent" of an order of removal. *Arevalo*, 344 F.3d at 9. Nor do they address an order that "give[s] effect to previously issued [removal] orders." *Castro-Cortez*, 239 F.3d at 1044.

Bottom line: "An order is either a 'final order of removal' or it is not." *Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 196 (2d Cir. 2022). Reinstatement decisions are not, so Ruiz-Perez must rely on the removal order from 1999 for the "final order of removal" that her petition challenges. The consequence is that her petition is 20 years too late.

2.

Our rule of orderliness is no obstacle to the correct result. Under the "well-settled rule of orderliness," "[t]hree-judge panels abide by a prior Fifth Circuit decision until the decision is overruled, expressly or implicitly, by either the United States Supreme Court or by the Fifth Circuit sitting en banc." *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) (quotation

19

omitted). "Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion establishes a rule of law inconsistent with that precedent." *Ibid.* (quotation omitted). Put another way, "a latter panel must simply determine that a former panel's decision has fallen unequivocally out of step with some intervening change in the law." *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021).

*Nasrallah* and *Johnson* "fundamentally change[d] the focus of the relevant analysis." *Ibid.*(quotation omitted). *Nasrallah* focused on the plain and ordinary meaning of "order of removal" in § 1252—the relevant jurisdictional provision at issue here. It made clear that rulings that do not "affect the validity of the final order" of removal are not part of the order. 140 S. Ct. at 1691. *Johnson* built on *Nasrallah*'s what-is-a-removal-order foundation but in the context of reinstatement decisions. In fact, *Johnson* was the Supreme Court's first meaningful description of reinstatement decisions and how the Government implements them. And the Court made clear that reinstatement decisions are not the product of removal proceedings. 141 S. Ct. at 2282–83 ("But because an alien subject to a reinstated order of removal will not have any removal proceedings, the process begins for him only if he expresses a fear to DHS of returning to the country of removal.").

It's true that the Supreme Court in *Johnson* did not expressly interpret § 1252, leaving open the reviewability of reinstatement decisions in a footnote:

> Respondents do argue, however, that some lower courts' interpretation of the phrase "final order of removal" as it is used in 8 U. S. C. § 1252(b)(1) requires that this Court adopt respondents' interpretation of § 1231 here. We express no view on whether the lower courts are correct in their interpretation of § 1252, which uses different language than § 1231 and relates to judicial review of removal orders rather than detention.

141 S. Ct. at 2285 n.6 (quotation omitted). But under our rule of orderliness, "[t]he overriding consideration is the similarity of the issues decided." *Gahagan*, 911 F.3d at 303; *see also In re Bonvillian*, 19 F.4th at 792 (reaffirming that principle). And even though there might be some differences between the statutes, the language and analytical questions are critically similar. They both involve the plain and ordinary meaning of "order of removal" and when orders become final. *Compare, e.g.*, § 1231(a)(1)(B)(i) ("The date the order of removal becomes administratively final"), *with* § 1252(a)(1) ("final order of removal"). *Nasrallah* and *Johnson* thus provide ample reason for our panel to reevaluate whether a reinstatement decision is a reviewable final order of removal. And even if *Nasrallah* and *Johnson* aren't enough for our panel, then they plainly warrant *en banc* reconsideration of our previous contrary decisions.

B.

Even if a reinstatement decision is an order of removal, Ruiz-Perez filed her petition for review later than 30 days after the decision became final, so it's untimely. I (1) explain when a reinstatement decision is final. I then (2) explain why our contrary precedent is no longer binding.

1.

A reinstatement decision becomes final once the immigration officer—not an IJ or the BIA—determines that the alien meets the requirements of reinstatement. The Second Circuit recently came to this conclusion in *Bhaktibhai-Patel*. And I would join our sister circuit.

As the Second Circuit pointed out, "[t]he definition of finality in § 1101(a)(47)(B) does not squarely apply to that decision because an illegal reentrant may not appeal a reinstatement decision to the BIA (or even to an immigration judge)." *Bhaktibhai-Patel*, 32 F.4th at 192 (citing 8 C.F.R. § 241.8(a)). Still, "[b]ecause the definition at § 1101(a)(47)(B) ties finality to

the final stage of agency review available as of right to aliens in regular removal proceedings," the Second Circuit determined "that a reinstatement decision becomes final once the agency's review process is complete." *Ibid*. Agency review is complete when an immigration officer decides to reinstate the prior order because that action is not subject to further review within the agency. *See id*. at 192–93. The only additional review is withholding-only proceedings, which do not affect the order of removal. The upshot is that "review may be available when the withholding-only proceedings conclude within 30 days of DHS's reinstatement decision and the reentrant files a petition for review before that period expires." *Id*. at 195 n.21.

Here, an immigration officer reinstated the prior order of removal on June 11, 2019. Ruiz-Perez petitioned for review in December 2020. That's well after the 30-day deadline.

### 2.

Contrary Fifth Circuit precedent, again, is no obstacle. It's true that our court previously concluded that reinstatement orders aren't final until the "completion of reasonable-fear and withholding-of-removal proceedings." *Ponce-Osorio v. Johnson*, 824 F.3d 502, 505 (5th Cir. 2016) (per curiam). But we did so based on an incorrect understanding of the interplay between removal orders and statutory withholding.

Specifically, we once wrote:

> The term "final" in its usual legal sense means ending a court action or proceeding leaving nothing further to be determined by the court or to be done except the administrative execution of the court's finding, but not precluding an appeal. With regard to agency action generally, the Supreme Court has said that to be final, agency action must mark the consummation of the agency's decisionmaking process, and it must determine rights or obligations or occasion legal consequences.

> When an alien pursues reasonable fear [and withholding of removal] proceedings, the reinstated removal order is not final in the usual legal sense because it cannot be executed until further agency proceedings are complete. And, although the reinstated removal order itself is not subject to further agency review, an IJ's decision on an application for relief from that order is appealable to the BIA. Thus, the rights, obligations, and legal consequences of the reinstated removal order are not fully determined until the reasonable fear and withholding of removal proceedings are complete.

*Id.* at 505–06 (quotation omitted). But again, *Nasrallah* and *Johnson* have fundamentally changed the focus of the finality analysis.

Since 2016, the Supreme Court has made clear that the order of removal is separate from statutory-withholding decisions (*i.e.*, withholding-of-removal and CAT relief). *See Nasrallah*, 140 S. Ct. at 1690 (explaining that § 1252(b)(9) "establish[es] that" questions arising from actions taken or proceedings brought to remove an alien "may be reviewed together with the final order of removal"); *see also Johnson*, 141 S. Ct. at 2288. That is, removal orders involve only the "antecedent" determination of "*whether* an alien is be removed," not "*where* an alien may be removed." *Id.* at 2285–86. Once the agency makes the antecedent determination, there are no additional agency proceedings on that issue. *See Bhaktibhai-Patel*, 32 F.4th at 194 n.20 ("[T]he [reinstatement] order occasions unalterable legal consequences regardless of the outcome of those proceedings." (quotation omitted)). The agency could remove the alien immediately to a country in which the alien doesn't claim CAT or withholding-of-removal relief. *See Johnson*, 141 S. Ct. at 2285. The rights, obligations, or legal consequences of the prior removal order are fully determined the moment the prior order is reinstated.

Thus, for purposes of finality, whether the alien will be removed is the only thing that matters. Otherwise, an order distinct from the order of

No. 20-61133

removal could affect whether the removal order is final. It makes no sense for finality of an order to depend on a separate order that can't change the first one.

## C.

Two final counterarguments merit discussion.

First, the majority suggests we can review any BIA decision that renders an alien "ineligible to be considered for cancelation of removal." *Ante*, at 7. For this proposition, the majority cites *Trejo v. Garland*, 3 F.4th 760 (5th Cir. 2021). But in that case, the alien asked us to review a final order of removal that resulted from ordinary removal proceedings. Such an order is obviously reviewable. But we don't have one here. So, with deepest respect, *Trejo* is irrelevant.

Second, Ruiz-Perez suggests that she has the right to seek *cancelation of removal* by pointing to provisions that might provide discretionary relief of reapplication for admission and waiver of inadmissibility. Even assuming Ruiz-Perez could seek cancelation of removal under 8 U.S.C. § 1229b, it would do nothing to affect our lack of jurisdiction. That's because she made her cancelation-of-removal request *outside* her removal proceedings. And jurisdiction over cancelation-of-removal rulings made outside removal proceedings is foreclosed by 8 U.S.C. § 1252(a)(2)(B). *Compare ibid.* ("[N]o court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under . . . 1229b [*i.e.*, cancelation of removal]."), *with* § 1252(a)(2)(D) (carving out the jurisdiction bar but only for a "petition for review" from a final order of removal).[2]

---

[2] Ruiz-Perez spends most of her brief on a statutory note to § 1229b, concerning seeking consent to reapply for admission. For the same reasons as cancelation of removal,

No. 20-61133

The Supreme Court recently suggested this result. As the Supreme Court noted, it's not unusual for "USCIS denials of discretionary relief" to be "made outside of the removal context." *Patel v. Garland*, 142 S. Ct. 1614, 1626 (2022); *see also ibid.* ("Those decisions are made outside of the removal context, and subparagraph (D) preserves review of legal and constitutional questions *only* when raised in a petition for review *of a final order of removal*." (emphases added)). The likely consequence is that courts of appeals lack jurisdiction to review denials of such relief. After all, Congress intended to foreclose direct review of such decisions *because* they are discretionary and made outside removal proceedings. *See id.* at 1626–27 ("The post-*St. Cyr* amendments expressly extended the jurisdictional bar to judgments made outside of removal proceedings at the same time that they preserved review of legal and constitutional questions made within removal proceedings. And foreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief." (quotation omitted)).

For these reasons, I would hold that Ruiz-Perez failed to establish our jurisdiction over the petition for review.

---

we lack jurisdiction over any denial outside removal proceedings of such discretionary relief.