21-0249-cv
*Abbo-Bradley, et al. v. City of Niagara Falls, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————————

August Term 2021

(Argued:  May 13, 2022      Decided:  July 14, 2023)

Docket No. 21-0249-cv

————————————

JOANN ABBO-BRADLEY, individually and as Parent and Natural Guardian of D.B.,
individually and as Parent and Natural Guardian of T.B., individually and as
Parent and Natural Guardian of C.B., MELANIE HERR, ZACHARY HERR,
individually and as Parent and Natural Guardian of C.H.,  as Parent and Natural
Guardian of H.H., ELENA KORSON, as Parent and Natural Guardian of L.K.,
NATHAN E. KORSON,

*Plaintiffs-Appellees,*

*v.*

CITY OF NIAGARA FALLS, NIAGARA FALLS WATER BOARD, CONESTOGA-ROVERS &
ASSOCIATES, CECOS INTERNATIONAL, INC., MILLER SPRINGS REMEDIATION
MANAGEMENT, INC., OCCIDENTAL CHEMICAL CORPORATION, individually and as
Successor in Interest to Hooker Chemicals and Plastics Corporation, OP-TECH
ENVIRONMENTAL SERVICES, ROY'S PLUMBING, INC., SCOTT LAWN YARD, INC.,
SEVENSON ENVIRONMENTAL SERVICES, INC., GLENN SPRINGS HOLDINGS, INC.,

*Defendants-Appellants.*

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

————————————

Before:     CHIN, SULLIVAN, AND MENASHI, *Circuit Judges*.

---

Appeal from an order of the United States District Court for the Western District of New York (Geraci, *J.*), entered January 25, 2021, in favor of plaintiffs-appellees -- members of three families residing in the City of Niagara Falls -- remanding this case, along with 18 identical cases, to the State of New York Supreme Court, County of Niagara.  Defendants-appellants are companies tasked with remediating disposal sites of hazardous chemicals in accordance with federal law.  The initial complaints in these identical cases addressed only one disposal site.  The complaints were all amended in 2020, however, to add three additional sites.  After the amendments, defendants-appellants sought to remove all 19 cases to federal court on the basis of federal officer and federal question jurisdiction.  The district court held that the notice of removal was untimely.

AFFIRMED.

Judge Sullivan concurs in a separate opinion.

---

CHARLES S. SIEGEL (Peter A. Kraus, Leslie C. MacLean, *on the brief*), Waters & Kraus, LLP, Dallas, TX, *and* Christen E. Civiletto, East Amherst, NY, *and* Melissa L. Stewart, Steven J. Phillips, Phillips & Paolicelli, LLP, New York, NY, *and* Paul Barr, Fanizzi & Barr, Niagara Falls, NY, *for Plaintiffs-Appellees.*

DOUGLAS E. FLEMING III (Sheila L. Birnbaum, Lincoln Davis Wilson, *on the brief*), Dechert LLP, New York, NY, *and* Kevin M. Hogan, Andrew P. Devine, Joshua Glasgow, and Elizabeth Bove, Phillips Lytle LLP, Buffalo, NY, *for Defendants-Appellants Occidental Chemical Corporation, Glenn Springs Holdings, Inc., and Miller Springs Remediation Management, Inc.*

Zackary D. Knaub, Greenberg Traurig, LLP, Albany, NY, *and* William G. Beck, Lathrop GPM, Kansas City, MO, *for Defendant-Appellant CECOS International, Inc.*

Jeffrey D. Schulman, Pillinger Miller Tarallo LLP, Syracuse, NY, *for Defendant-Appellant OP-Tech Environmental Services.*

Robert E. Knoer, Alice J. Cunningham, The Knoer Group, PLLC, Buffalo, NY, *for Defendant-Appellant Roy's Plumbing, Inc.*

Mark P. Della Posta, Walsh, Roberts & Grace LLP, Buffalo, NY, *for Defendant-Appellant City of Niagara Falls.*

3

Jeffrey F. Baase, Corey J. Weber, Rupp Baase Pfalzgraf
Cunningham LLC, Buffalo, NY, *for Defendant-
Appellant Niagara Falls Water Board.*

Jeffrey C. Stravino, Hodgson Russ LLP, Buffalo, NY, *for
Defendant-Appellant Conestoga-Rovers & Associates.*

Agnieszka Wilewicz, Patricia A. Rauh, Hurwitz & Fine,
P.C., Buffalo, NY, *for Defendant-Appellant Sevenson
Environmental Services, Inc.*

Brian Sutter, Sugarman Law Firm, LLP, Buffalo, NY, *for
Defendant-Appellant Scott Lawn Yard, Inc.*

John M. Masslon II, Cory L. Andrews, Washington
Legal Foundation, Washington, DC, *for Amicus
Curiae Washington Legal Foundation, in support of
Defendants-Appellants*.

CHIN, *Circuit Judge*:

In this case, defendants-appellants are the City of Niagara Falls

("Niagara Falls"), its water board, and various companies (collectively,

"Defendants") tasked with remediation of hazardous waste disposal sites under

the Comprehensive Environmental Response, Compensation, and Liability Act

("Superfund"), 42 U.S.C. § 103.  Plaintiffs-appellees ("Plaintiffs") -- members of

three families residing in Niagara Falls -- brought this action in the State of New

York Supreme Court, County of Niagara, in 2012, seeking damages arising from

purported deficiencies in Defendants' remediation of one Superfund site, the Love Canal.

Between 2013 and 2017, 18 identical complaints were filed by other plaintiffs. In 2013, Defendants removed two of the 19 cases -- including this one -- to the court below on the basis of federal question jurisdiction, but the district court remanded the cases to state court. The cases remained in state court until 2020, when plaintiffs in all 19 cases filed identical amended complaints. The amended complaints alleged additional sources of injury. Defendants again removed the 19 cases, this time on the basis of both federal officer and federal question jurisdiction. The district court held that the removal was untimely and again remanded the cases to state court. Defendants appeal.

We agree that Defendants' removal was untimely. We therefore AFFIRM the district court's order remanding this case and 18 others to the State of New York Supreme Court, County of Niagara.

## BACKGROUND

### A.    Statutory Framework

When a plaintiff commences a lawsuit in a state court, in appropriate cases a defendant may file a notice of removal to remove the case to

federal district court. If the defendant does so, the notice must contain "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Once a case is removed, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d).

Grounds for removal include, inter alia, federal officer jurisdiction and federal question jurisdiction. Federal officer jurisdiction arises from the federal officer removal statute, 28 U.S.C. § 1442(a).[1] Such jurisdiction rests on "the very basic interest in the enforcement of federal law through federal officials." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). Federal question jurisdiction is part of the "original jurisdiction" of the federal district courts. *See* 28 U.S.C. § 1441 ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . ."); *see also* 28 U.S.C. § 1332(a) (defining when district courts have original jurisdiction). Such jurisdiction covers any civil action "founded on a claim or right arising

---

[1] The statute provides, in relevant part, that a case may be removed from state court to federal court when the case is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

6

under the Constitution, treaties or laws of the United States." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474-75 (1998).

No matter the grounds for removal, however, a notice of removal must follow the timeliness requirements Congress set forth in 28 U.S.C. § 1446. Section 1446(b)(1) governs removal following receipt of an initial pleading. Generally, a defendant has up to 30 days from receipt of an initial pleading to file a notice of removal. 28 U.S.C. § 1446(b)(1).[2] There are, however, some exceptions. One such exception is set forth in § 1446(b)(3).

Under § 1446(b)(3), a defendant may "remove a case outside of the ordinary thirty-day window if the basis for removal becomes clear only after a plaintiff files an amended pleading." *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 152-53 (2d Cir. 2021). The statute reads:

> Except as provided [in the subsection regarding removal based on diversity of citizenship], if the case stated by the initial pleading is not removable, a notice

---

[2]    Section 1446(b)(1) provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading . . . or within 30 days after the service of summons upon the defendant if such initial pleading . . . is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).

7

> of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).

If a notice of removal is untimely, the case must be remanded to the state court. 28 U.S.C. § 1447.

B.    *The Facts*

In the late 1800s, William T. Love began digging a canal to connect the upper and lower parts of the Niagara River. His plan was to use the Niagara River to provide cheap hydroelectric power. Love's plan was shorted, however, by the invention of alternating-current electricity. The half-mile of the canal he had already dug remained unused until Hooker Chemicals and Plastics Corporation ("Hooker") purchased the site (the "Love Canal site"). Hooker is the predecessor in interest of Defendant Occidental Chemical Corporation ("Occidental").

From approximately 1941 to 1953, Hooker, as well as Niagara Falls, used the Love Canal site for waste disposal. In 1953, Hooker deeded the Love Canal site to the Niagara Falls Board of Education, which built an elementary

8

school on the property. The area was further developed and populated, but residents began noticing a problem with odors and residues. In 1978, the New York State Department of Health began studying the area around the Love Canal site; it found that women living around the site were experiencing greater than normal rates of miscarriages and birth defects. The state government issued a health emergency declaration. Approximately 950 families were ultimately evacuated from the area around the site.

New York State sought to remediate the contamination. It hired some of the Defendant companies to do so. After Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act, also known as the Superfund, in 1980, the federal government began to oversee the remediation as well. Eventually, both the federal government and New York State sued Hooker under the Superfund program, seeking injunctive relief and reimbursement of cleaning costs relating to the Love Canal site. On February 23, 1988, the district court (Curtin, *J.*) found Hooker's successor in interest, Occidental, jointly and severally liable for the costs.

Also in 1988, the New York State Department of Health issued a decision finding certain areas around the Love Canal site habitable for residential

use.  The federal Environmental Protection Agency issued a Preliminary Close-Out Report and Final Close-Out Report for the area in 1999 and 2004, respectively; these reports reflected a determination that the Love Canal site remediation was complete and protective of human health and the environment as required by the Superfund program.

Current residents, including Plaintiffs, moved into the area.  But as time went on, the residents apparently began noticing medical problems, including:

> [B]irth defects, chromosomal abnormalities, bone marrow abnormalities, neurological injuries and/or toxicity, cardiac conditions, pulmonary symptoms, unexplained fevers, skin conditions, behavioral problems, learning disabilities, and dental problems or complications.

Joint App'x at 2117.  Chemicals were "visible to the naked eye" in the area.  *Id*. at 2118.  Plaintiffs' homes became "virtually unsalable."  *Id*.

**C.**     *The Proceedings Below*

As noted, this case is one of 19 identical cases filed against Defendants between 2012 and 2017.  The cases alleged injury as a result of toxic exposure from the Love Canal site.  In 2013, Defendants removed two cases to federal district court on the basis of federal question jurisdiction.  On August 22,

2013, the district court remanded the cases back to state court, concluding that it lacked federal jurisdiction. *See Abbo-Bradley v. City of Niagara Falls*, No. 13-CV-487, 2013 WL 4505454, at *1, *12 (W.D.N.Y. Aug. 22, 2013); *see also Pierini v. City of Niagara Falls*, No. 13-CV-498, 2013 WL 4505461, at *1, *12 (W.D.N.Y. Aug. 22, 2013). As the 17 other related cases alleging toxic exposure from the Love Canal site were filed, Defendants did not remove them within thirty days of filing. Thus, all 19 cases remained in state court until 2020.

On January 6, 2020, plaintiffs in all 19 cases filed identical amended complaints alleging that the toxic exposure was also from three additional sites. These sites were the sewers around the Love Canal site, an area around 96th Street and Colvin Boulevard in Niagara Falls where sewer remediation took place, and a chemical plant in the Niagara Falls owned by Occidental. Thereafter, in a notice of removal dated January 31, 2020, Defendants removed all 19 cases to federal court on the basis of both federal officer and federal question jurisdiction. On March 16, 2020, plaintiffs in the 19 cases moved to remand. The magistrate judge (McCarthy, *J.*) recommended that the motion be granted. On January 25, 2021, the district court explained that it found "no error

11

in [the] recommendation" and granted Plaintiffs' motion for remand.  Special App'x at 4.

This appeal followed.

## *DISCUSSION*

While orders remanding a case to state court generally are not reviewable, we do have appellate jurisdiction over remand orders if an asserted ground for removal was federal officer jurisdiction.  28 U.S.C. § 1447(d).  On appeal, we may "consider all of the defendants' grounds for removal" rather than only federal officer jurisdiction.  *BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1543 (2021).  Thus, we review *de novo* Defendants' asserted federal officer *and* federal question grounds.  *See Agyin v. Razmzan*, 986 F.3d 168, 173-74 (2d Cir. 2021).  Defendants have "the burden of establishing that removal is proper."  *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).

Before we reach the issue of federal jurisdiction, however, we must answer the threshold question of whether Defendants' notice of removal was timely, as timeliness is a dispositive issue.  The district court held that Defendants' removal was untimely.  We agree.

**A.** *Applicable Law*

A defendant has up to thirty days from receipt of an initial pleading to file a notice of removal. 28 U.S.C. § 1446(b)(1); *see Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 142 (2d Cir. 2014). When, as here, a defendant seeks to remove a case more than thirty days after the initial pleading was filed, the defendant may do so if the case meets the two requirements of 28 U.S.C § 1446(b)(3).[3] First, "the case stated by the initial pleading" must be "not removable." 28 U.S.C § 1446(b)(3); *see Cutrone*, 749 F.3d at 142. Second, a defendant must file the notice of removal within thirty days after receipt of a "paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C § 1446(b)(3); *see Cutrone*, 749 F.3d at 142. Such a paper includes "an amended pleading." 28 U.S.C § 1446(b)(3).

Some of our sister circuits have recognized a "judicially-created revival exception to the thirty-day requirement." *Johnson v. Heublein, Inc.*, 227 F.3d 236, 241 (5th Cir. 2000). The Fifth, Seventh, and Tenth Circuits have adopted the revival doctrine. *See id.*; *see also Wilson v. Intercollegiate (Big Ten) Conf. Athletic*

---

[3]     Different requirements may apply under 28 U.S.C. § 1446(b)(3) for removal based on diversity of citizenship. There is no diversity of citizenship here and neither party argues that there is.

13

*Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982); *Henderson v. Midwest Refin. Co.*, 43 F.2d 23, 25 (10th Cir. 1930). The Fifth Circuit case establishing the revival doctrine is also binding precedent in the Eleventh Circuit. *See Cliett v. Scott*, 233 F.2d 269, 271 (5th Cir. 1956); *see also* Joseph H. Varner et al., *Clear!: Reviving the Right to Removal*, 64 Fed. Law. 32, 37 & n.100 (2017) (discussing the Fifth Circuit split to form the Eleventh Circuit).

The revival doctrine allows for removal even when the requirements of § 1446(b)(3) are not met -- that is, the initial pleading was removable, or the notice was not filed within thirty days. *See Johnson*, 227 F.3d at 241 (explaining that the revival exception restores "a lapsed right to remove an initially removable case . . . when the complaint is amended so substantially as to . . . constitute essentially a new lawsuit"). We have never recognized the revival doctrine, nor have we ever considered a case applying the revival doctrine.

**B.**  *Analysis*

Defendants argue that their motion for removal is timely under both § 1446 and the revival doctrine. **[Blue 24, 42]** We are not persuaded.

14

**1.** *28 U.S.C. § 1446(b)(3)*

As Defendants sought to remove pursuant to an amended and not initial pleading, the applicable subsection is § 1446(b)(3). Thus, to be timely, "the case stated by [Plaintiffs'] initial pleading" must not have been removable, 28 U.S.C. § 1446(b)(3), and Defendants' notice of removal must have been filed "within thirty days after receipt" of a paper, such as Plaintiffs' amended complaint, "from which it may first be ascertained that the case is one which is or has become removable." *Id*. Defendants' notice of removal does not meet either requirement; hence, it was untimely.

**a.** *Case Stated by Initial Pleading*

First, any basis for federal jurisdiction in Plaintiffs' amended complaint also existed in their original complaint. The original complaint alleged injury resulting from improper remediation of a site subject to remediation under the Superfund program. The amended complaint alleged the same injury, resulting from remediation under the same Superfund program, but included remediation of three additional sites. In fact, at oral argument on appeal, Defendants conceded that Plaintiffs' amended complaint does not establish jurisdiction in a way that is different from their original complaint.

15

Oral Argument at 01:13-:24, *Abbo-Bradley v. City of Niagara Falls* (2d Cir. May 13, 2022) (No. 21-249).  And Defendants do not argue otherwise in their papers.

This concession is dispositive.  For Defendants' removal to succeed under the plain language of the statute, the case stated by the initial pleading must not have been removable.  28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable . . . .").  As any grounds for removal between Plaintiffs' initial and amended complaints remain the same, Defendants cannot meet the first requirement if the amended complaint is removable.[4]

In arguing to the contrary, Defendants point to decisions of our sister circuits emphasizing that a ground for removal appearing for the first time must only be "a different set of facts that state a new ground for removal." *O'Bryan v. Chandler*, 496 F.2d 403, 410 (10th Cir. 1974); *see S.W.S. Erectors, Inc. v.*

---

[4]     The case stated by Plaintiffs' initial pleading may have been removable.  We have found federal question jurisdiction in a case with strong parallels to this one.  *See Bartlett v. Honeywell Int'l, Inc.*, 737 F. App'x 543 (2d Cir. 2018) (summary order).  In *Honeywell*, we explained that the issues "rais[ing] disputed, substantial federal issues" leading to federal question jurisdiction included "whether [defendant] has complied with a consent decree . . . and the circumstances under which [Superfund] might preempt the residents' state tort law claims," *id.* at 546 -- which are the same questions raised here by both Plaintiffs' initial complaint and their amended complaint.  But even if the case stated by the Plaintiffs' initial pleading were not removable, then the case stated by the amended complaint would also not be removable, and the order to remand still would be appropriate.

16

*Infax, Inc.*, 72 F.3d 489, 493 (5th Cir. 1996) ("[S]ection 1446(b) contemplates a valid second petition for removal that alleges new facts in support of the same theory of removal.").  There is no dispute that Plaintiffs set forth new facts in their amended pleading.  The amended pleading "alleged, for the first time, that Plaintiffs' claimed injuries were caused by inadequate remediation at three other CERCLA sites separate from Love Canal."  Defs.-Appellants' Br. at 10; *see* Pls.-Appellees' Br. at 5 (Plaintiffs "added allegations describing additional sources of toxic exposures").  But this case differs from those Defendants cite as support.

Even if a change in the pleaded facts *could* cause a case to "become removable," the new facts alleged by Plaintiffs do not.  That is so because the additional sites here do not affect the basis for jurisdiction.  In *O'Bryan*, the Tenth Circuit held that a motion to remove "was based on a different ground or set of facts than the first removal petition" when the facts as to the location of an allegedly libelous statement -- the basis for federal jurisdiction -- were changed. 496 F.2d at 411.  And, in *S.W.S. Erectors*, the Fifth Circuit explained that removal "under diversity jurisdiction using newly acquired facts from [a deposition transcript]" was appropriate because the "deposition constitutes a new paper . . . that changed the facts regarding the removableness of the case."  72

17

F.3d at 494. In both of those cases, the changed fact affected whether federal jurisdiction could properly be asserted at all.

Here, there is a crucial difference -- the changed facts do not affect whether federal jurisdiction can properly be asserted. Defendants could assert the same basis for federal officer and federal question jurisdiction regardless of whether Plaintiffs alleged their injury was caused by the Love Canal site and the three additional sites, the three additional sites alone, or any one of the sites. Plaintiffs' factual changes did not affect whether the case stated by the original pleading was removable.

**b.** *First Be Ascertained That the Case Is Removable*

Additionally, Defendants do not meet the second requirement, that the notice of removal be filed within 30 days from when "it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). As discussed above -- and as Defendants themselves conceded -- Plaintiffs' amended pleading does not establish jurisdiction in a different way from Plaintiffs' initial pleading. The removability of the cases, if any, could "first be ascertained" in the original complaints, and Defendants did not seek to remove (for a second time in two of the cases and for the first time in

18

17 of the cases) until many years later. Therefore, based on the plain language of the statute, Defendants do not meet this requirement.

**2.** *Revival Doctrine*

Nor does the revival doctrine save Defendants' untimely removal. We need not adopt or reject the revival doctrine because, in any event, this case does not fall within the parameters of the doctrine established by our sister circuits. Plaintiffs' amendments did not change their complaint so substantially as to "constitute essentially a new lawsuit." *Johnson v. Heublein, Inc.*, 227 F.3d 236, 241 (5th Cir. 2000). Amicus curiae, who urges us to adopt the revival doctrine, also acknowledges that "for the revival doctrine to apply, [the] claims [raised in plaintiff's original complaint] must be minor compared to the amended complaint's claims." Amicus Br. at 15.

At bottom, Plaintiffs continue to allege the same injuries, against the same Defendants, caused by the same toxins, and resulting in the same damages. The amended complaint highlighted only additional sources of already-alleged injury. Even if we were to deviate from Congress's clear statutory language on timeliness and consider the revival doctrine, the changes in Plaintiffs' pleadings

19

are not substantial, and the amendments did not result in essentially new lawsuits.

## CONCLUSION

For the reasons set forth above, Defendants' notice of removal was untimely. Accordingly, without reaching the question of whether federal jurisdiction exists, we AFFIRM the district court's January 25, 2021, order remanding the above-captioned case, and 18 related cases, to the State of New York Supreme Court, County of Niagara.

RICHARD J. SULLIVAN, *Circuit Judge*, concurring:

I concur in the majority's bottom-line conclusion that "Defendants' [2020] removal was untimely" under 28 U.S.C. § 1446(b)(3). Maj. Op. at 12. Accordingly, I also concur in the judgment of the Court "affirm[ing] the district court's January 25, 2021[] order remanding the[se] [consolidated] cases[] to the State of New York Supreme Court, County of Niagara." *Id.* at 20 (capitalization standardized). I write separately, however, to address what strikes me as Defendants' most compelling argument, which goes unaddressed in the majority opinion. Specifically, Defendants contend that the district court's 2013 remand order conclusively establishes that Plaintiffs' 2013 complaints were "not removable" – either on the federal-question grounds that Defendants actually raised in 2013, *or* on the federal-officer grounds that Defendants ostensibly failed to "ascertain[]" at that time. 28 U.S.C. § 1446(b)(3). That contention is incorrect, but it reflects understandable confusion over our Circuit's caselaw concerning the nature and extent of a district court's obligation to sua sponte raise jurisdictional questions not presented by the parties. I therefore write in hopes of offering clarity on that point of law.

In order to frame the issues more concretely, I begin by acknowledging the elephant in the room – namely, that if Defendants *could* make it past section 1446(b)(3)'s procedural barriers to their 2020 successive removal, and thus secure our review of their substantive jurisdictional arguments, it seems almost certain that they could establish federal-officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

The federal-officer removal statute creates federal subject-matter jurisdiction over any "civil action . . . against . . . any person acting under" any "officer . . . of the United States or of any agency thereof, . . . for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).  "To invoke the statute," Defendants "must demonstrate that (1) [they are] person[s] under the statute, (2) [they] acted under color of federal office, and (3) [they] ha[ve] a colorable federal defense."  *Agyin v. Razmzan*, 986 F.3d 168, 174 (2d Cir. 2021) (internal quotation marks omitted).

The first of these elements is not disputed here.  The second element is not a close call.  Plaintiffs allege that Occidental Chemical Corporation ("Occidental") failed to "exercise . . . reasonable care" to remediate "the risk of contamination and harm to Plaintiffs" arising out of "the disposal of waste" and "hazardous

2

chemicals" at "the Love Canal site," "the Hyde Park Landfill, the 102nd Street waste site, and the S-Area waste site." J. App'x at 2164 ¶ 163, 2184 ¶ 238 (internal quotation marks omitted). But at each site, Defendants contend that the remediation work was performed "under" specific instructions from "office[rs]" of the Environmental Protection Agency (the "EPA"), Department of Justice, and/or Department of the Interior, and "under" ongoing supervision by additional EPA "office[rs]." *Agyin*, 986 F.3d at 174 (internal quotation marks omitted); 28 U.S.C. § 1442(a)(1). The third element is even more one-sided. Defendants' proposed federal defense is that the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, preempts Plaintiffs' state-law claims; indeed, Defendants point out that the EPA officers overseeing Defendants' implementation of the CERCLA remedies certified that the cleanup was "functioning as intended" at each of the four sites, J. App'x at 2570, 3284, 3636; W.D.N.Y. Dkt. No. 13-cv-487 (JTC), Doc. No. 1-4 at 14. When we recently considered a functionally identical defense in 2018, we ruled that it was meritorious. *Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 549–51 (2d Cir. 2018). Needless to say, a meritorious federal defense is, a fortiori, a "colorable" one. *Agyin*, 986 F.3d at 174 (internal quotation marks omitted).

3

Of course, the availability of federal-officer removal was no less apparent from Plaintiffs' 2013 complaints than from their 2020 complaints. The 2013 complaints were removable because they sought to impose state-law tort liability for remedial actions that Defendants had taken while "acting under" the federal officers who instructed and supervised the Love Canal remedies, and for which Defendants could raise the "colorable federal [preemption] defense" that they had complied (as the EPA certified) with the federal government's chosen CERCLA remedies for the Love Canal site. *Id.* (internal quotation marks omitted). To be sure, the 2020 complaints identified *additional* federal officers under whom they had acted at the Hyde Park, 102nd Street, and S-Area sites, and *additional* sets of federally imposed remedial instructions with which the EPA had certified their compliance at those sites. But the availability of federal-officer removal was apparent on the basis of the Love Canal allegations alone and those allegations were clearly contained in the 2013 complaint.[1]

---

[1] Had the 2020 complaints been brought against *new defendants* "acting under [an] officer[] of the United States or of any agency," 28 U.S.C. § 1442 – and not simply the same defendants attempting successive removal – it seems clear that those new defendants would not be barred from removing based on federal-officer jurisdiction. That is because the 2020 complaints would function as *initial* pleadings for those defendants, in which case removal would not be *successive* under section 1446(b)(3). *See id.* § 1446(b)(1) (requiring that a notice of removal be filed within thirty days after (1) "the receipt by the defendant . . . of a copy of the *initial pleading* setting forth the claim for relief" or (2) "the service of summons upon the defendant if such *initial pleading* has then been filed in court and is not required to be served" (emphasis added)).

4

As a result, it would seem clear that Defendants cannot satisfy *either* of the tandem requirements of section 1446(b)(3). They cannot show that "the case stated by [the 2013 complaints was] not removable," because it *was*, in fact, removable. 28 U.S.C. § 1446(b)(3). And they cannot show that the 2020 complaints were the "pleading . . . from which it [could] first be ascertained that the case [was] one which [was] or ha[d] become removable," because that was already ascertainable back in 2013. *Id.*

Nevertheless, Defendants ask us to adopt the Federal Circuit's approach to the interplay of sections 1446(b)(3) and 1447(d), arguing that where a district court's initial remand order is "immune from review under [section] 1447(d)," appellate courts may "not consider whether the action was removable under the original complaint," and instead must decide only whether "the previously non-removable action *became* removable under [section] 1446(b)(3)." *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 648 (Fed. Cir. 2015) (emphasis added). Indeed, under the Federal Circuit's formulation, there appears to be little (if any) meaningful distinction between a case "bec[o]m[ing] removable" and it simply

---

Indeed, section 1446(b)(2)(C) itself recognizes that "a later-served defendant [may] file[] a notice of removal," and section 1446(b)(2)(B) expressly states that "*[e]ach defendant* shall have [thirty] days after receipt by or service on *that defendant* of the *initial pleading or summons* . . . to file [a] notice of removal." *Id.* § 1446(b)(2)(B), (C) (emphasis added).

*being* removable – or even, for that matter, it *always having been* removable. *Id.* Once a district court has issued a section-1447(d)-protected remand order ruling that "the original complaint was not removable, . . . it is unnecessary to search for a *new* basis for removal in the amended complaint, but rather only necessary to search for *a* basis for removal under [section] 1446(b)(3)." *Id.*

That cannot be right. Most importantly, the approach adopted by the Federal Circuit and urged by Defendants would give no effect to the statutory term "first," rendering it meaningless (at least for purposes of cases in the procedural posture confronting us here).[2] 28 U.S.C. § 1446(b)(3). It would thereby violate the longstanding axiom that "[i]n construing a statute[,] we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sototone Corp.*, 442 U.S. 330, 339 (1979); *cf. Potter v. United States*, 155 U.S. 438, 446 (1894) (instructing that statutory language "cannot be regarded as mere surplusage; it means something"). Likewise, such an approach would violate the congressional

---

[2] That is, cases where (1) a defendant initially removed a case *without* invoking jurisdiction under "[28 U.S.C. §§] 1442 or 1443," (2) the district court issued an "[un]reviewable" order remanding the case at that time, (3) the defendant then sought a successive removal "pursuant to section 1442 or 1443," (4) the district court again remanded, and (5) the defendant appealed from that second remand order under section 1447(d)'s exception allowing that "an order remanding a case to the [s]tate court from which it was removed pursuant to section 1442 or 1443 . . . *shall* be reviewable by appeal." 28 U.S.C. § 1447(d) (emphasis added).

6

purpose – made manifest on the face of section 1446(b)(3)'s text – that "defendants are not entitled to more than one bite at the apple" unless and until an amended pleading has "substituted a new apple," i.e., stated a *newly* removable case. *Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1189 (9th Cir. 2015).

Defendants counter that "the 2013 remand order *necessarily* determined the removability of the facts alleged in th[e] [2013] pleading[s] on *all* available theories, *whether asserted or not*," and that our mere consideration of "whether other theories could have been asserted in 2013" would "violate[] the prohibition of review of . . . remand orders." Defendants Br. at 3–4 (emphasis added); *see also id.* at 25 ("[T]he [2013] remand is conclusive as to the removability of [the 2013] pleading[s'] factual allegations based on *all* theories [of removability]." (emphasis added)). But nothing in the text of section 1447(d) suggests such a broad construction. Its plain language speaks to the "reviewab[ility]" of "*[a]n order* remanding a case to . . . [s]tate court." 28 U.S.C. § 1447(d) (emphasis added). In fact, what *is* facially apparent from the text of "[s]ection 1447(d) [is] Congress's longstanding 'policy of not permitting interruption of the litigation of the merits of a removed case by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed.'" *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 238

7

(2007) (quoting *United States v. Rice*, 327 U.S. 742, 751 (1946)). It therefore makes no sense to construe section 1447(d) as effectively providing an end-run around section 1446(b)(3)'s otherwise clear prohibition on successive removals of a case any later than "[thirty] days" – here, *seven years* – after its "removab[ility]" could "first be ascertained." 28 U.S.C. § 1446(b)(3).

Unable to rely on the plain language of section 1447(d), Defendants invoke our oft-repeated references to federal courts' "independent obligation to consider the *presence or absence* of subject[-]matter jurisdiction sua sponte." Defendants Br. at 29–30 (quoting *Jennifer Matthew Nursing & Rehab. Ctr. v. HHS*, 607 F.3d 951, 955 (2d Cir. 2010) (emphasis added). In other words, Defendants suggest that the district court was obliged in 2013 to "consider the presence . . . of [federal-officer removal] jurisdiction sua sponte" – notwithstanding Defendants' failure to actually invoke federal-officer jurisdiction at that time – and that we must therefore read into the district court's 2013 remand order a sub silentio ruling that Plaintiffs' 2013 complaints were *not* removable on federal-officer grounds. *Id.* at 29 (internal quotation marks omitted). Defendants are mistaken, but they can perhaps be excused for their confusion.

In this Circuit, it is well-settled law that courts "have an independent obligation to consider . . . sua sponte" whether they might "*lack* . . . subject[-]matter jurisdiction" for reasons that "neither party has suggested." *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) (emphasis added). We have never squarely decided whether that obligation cuts both ways – that is, whether courts must *also* "consider . . . sua sponte" whether they might *have* subject-matter jurisdiction for reasons that "neither party has suggested." *Id.* As explained below, I am persuaded that binding Supreme Court precedent, well-reasoned decisions of our sister circuits, and the best reading of our own caselaw all require answering that question in the negative. But the language we have traditionally used to describe the sua sponte jurisdictional inquiry – namely, as one into "the *presence or absence* of subject[-]matter jurisdiction" – is regrettably apt to sow confusion on that point. *Id.* (emphasis added); *see also, e.g.*, *Franco v. Gunsalus*, 972 F.3d 170, 174 (2d Cir. 2020) (same); *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 181 (2d Cir. 2018) (same); *In re Tronox Inc.*, 855 F.3d 84, 95 (2d Cir. 2017) (same); *AmBase Corp. v. United States*, 731 F.3d 109, 119 (2d Cir. 2013) (same); *Terebesi v. Torreso*, 764 F.3d 217, 228 n.9 (2d Cir. 2014) (same); *In re Quigley Co.*, 676 F.3d 45, 50 (2d Cir. 2012) (same); *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 123 (2d Cir.

9

2008) (same). Taken at face value, this language might understandably be read to suggest that courts have a double-sided obligation to consider any arguments for the "presence" of jurisdiction not raised by the party invoking it, "*or*" any arguments for the "absence" of jurisdiction not raised by the party opposing it. *E.g.*, *Joseph*, 465 F.3d at 89 (emphasis added). But closer analysis shows this is not the case.

Judicial precedents are generally not amenable to the kind of fine-grained textual analysis that statutes are: the authoritative weight in an opinion stems from what the court actually "decided" within "the circumstances of the particular case," rather than the formal language of the "remarks made in the course of a decision." Bryan A. Garner, *et al.*, The Law of Judicial Precedent §§ 4, 6 (2016). And in *that* sense, our precedents clearly support the "one-way" view of the obligation to inquire sua sponte into subject-matter jurisdiction. In countless cases, we have undertaken such an inquiry into potential jurisdictional *defects* that the parties had failed to point out. *See, e.g.*, *Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 187 (2d Cir. 2022) ("Although both [parties] insist we *have* jurisdiction[,] . . . we conclude that the [Immigration and Nationality Act] *deprives* us of jurisdiction . . . ." (emphasis added)); *Fracasse v. People's United Bank*, 747 F.3d 141,

10

143 (2d Cir. 2014) (holding that, where "subject[-]matter jurisdiction [was] *lacking* and no party ha[d] called the matter to the [district] court's attention, the court ha[d] the duty to *dismiss* the action sua sponte" (emphasis added and internal quotation marks omitted)); *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 328 (2d Cir. 2005) ("Although the parties do not address" whether "the district court *lacked* subject-matter jurisdiction," since "jurisdiction is *questionable* we are obliged to examine the question sua sponte." (emphasis added)).  I am unaware of any case in which we have found ourselves obliged to go searching for unbriefed arguments *in support of* our own appellate jurisdiction, or faulted a district court for not doing likewise with unarticulated arguments *in support of* its original subject-matter jurisdiction.

Moreover, several of our sister circuits have explicitly held what can be inferred from our own caselaw – namely, that a court's "duty to consider unargued *obstacles* to subject[-]matter jurisdiction does not affect [its] discretion to decline to consider waived arguments that might have *supported* such jurisdiction." *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 n.2 (10th Cir. 1996), *superseded by statute on other grounds as recognized in United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764–65 (10th Cir. 2019); *accord Taylor*

*v. KeyCorp*, 680 F.3d 609, 615 n.5 (6th Cir. 2012) (adopting Tenth Circuit's holding from *Ramseyer*); *Huster v. j2 Cloud Servs., Inc.*, 682 F. App'x 910, 915 (Fed. Cir. 2017) (same); *United States v. 24.30 Acres of Land*, 105 F. App'x 134, 135 (8th Cir. 2004) (similar); *see also, e.g.*, *Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 34 (1st Cir. 2018) ("[T]he proposition that subject-matter jurisdiction cannot be waived or created by acquiescence . . . . is a one-way ratchet. Even though federal subject-matter jurisdiction cannot be established through waiver or estoppel, it may be defeated by waiver or estoppel."); *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1207 n.16 (5th Cir. 1992) ("[W]e must always be vigilant to ensure that we have subject[-]matter jurisdiction, addressing the issue sua sponte if need be. But, this discipline is separate from our declining to address untimely raised legal theories *in support of* that jurisdiction. . . . [I]t is not our role to exercise jurisdiction over any dispute[] that might possibly fall within our limited reach.").

The final blows to Defendants' view of the sua sponte jurisdictional inquiry are dealt by the Supreme Court. Although that Court appears not to have addressed the question any more directly than we have, a synthesis of its precedents confirms the unanimous view of our sister circuits. First, the Supreme Court has held that "[j]urisdiction may not be sustained on a theory that the

12

plaintiff has not advanced." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986). To be sure, the pertinent question here is how district courts should deal with jurisdictional theories that a removing defendant, rather than a plaintiff, has failed or declined to advance. Still, *Merrell Dow* significantly undercuts the basic premise of Defendants' argument, which is that district courts *must* sustain subject-matter jurisdiction on any seemingly viable theory, regardless of whether *either* party has raised it.

To the extent that *Merrell Dow* leaves any doubt, we need look no further than the Supreme Court's subsequent decision in *Kokkonen v. Guardian Life Insurance Co. of America,* in which the Court held that "[i]t is to be presumed that a cause lies outside [the federal courts'] limited [subject-matter] jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." 511 U.S. 375, 377 (1994); *see also McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017) ("The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction."); *Cal. Pub. Emps' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) ("Where . . . jurisdiction is asserted by a defendant in a removal petition, . . . the defendant has the burden of establishing that removal

13

is proper." (internal quotation marks omitted)).  A removing defendant's burden of establishing jurisdiction would be utterly meaningless if the district court were required to pick it up and carry it on the defendant's behalf.

*       *       *

In the end, I see no support for Defendants' contention that the district court was obliged to consider federal-officer removal jurisdiction in 2013, when Defendants failed to invoke that jurisdictional ground in their removal papers. As such, Defendants have no basis to argue that the district court's 2013 remand order constructively ruled that Plaintiffs' 2013 complaints were not removable under the federal-officer removal statute.  In turn, section 1447(d) presents no barrier to our acknowledgment of what is readily apparent here:  that the 2013 complaints *were*, in fact, removable on federal-officer grounds, and that the removability of these consolidated cases could "first be ascertained" seven years before Defendants attempted the successive removal now before us.  28 U.S.C. § 1446(b)(3).  I therefore concur in the majority's conclusion that Defendants' 2020 removal was untimely under section 1446(b)(3), and in the judgment of the Court affirming the district court's order remanding to the New York Supreme Court.